JOHN H. HORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61765. Promulgated October 30, 1935.

*Horace Andrews, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine a deficiency in the income tax of the petitioner for the year 1929 in the sum of $10,580.15.

The sole issue is the deductibility of taxes on personal property claimed to have been paid by him or on his behalf to the State of Ohio.

The facts were stipulated and, so far as material, are substantially as follows:

John Huntington of Cleveland, Ohio, died in 1893, leaving a last will and codicil thereto which were probated in the Probate Court of Cuyahoga County, Ohio, on February 4, 1893, and executors were

then appointed and letters testamentary issued. The will and codicil provided for certain specific bequests, the establishment of a museum of art and the disposal of the testator's property under certain contingencies. The ultimate disposition of the remaining assets of the estate was covered by item 6, paragraph four, as follows:

Fourth: At the death of all my said children and my said wife, I give, devise and bequeath to my grandchildren then living three-fourths of all my said estate in the hands of my said trustee, share and share alike, to them and their heirs and assigns forever; but said three-fourths of my estate so given to them shall remain in the hands of my said trustees, *to be held*, managed and controlled by them, *until the youngest of my grandchildren, living at the time of the death of the last survivor of my said wife and children, shall arrive at the age of twenty one years, when and at which time my said grandchildren shall come into the possession of the same.* In the meantime said trustees shall pay to said grandchildren the entire net income arising from said portion of said estate so given to them, share and share alike, semi-annually or quarterly, in their discretion.

The remaining portion of my said estate in the hands of my said trustees; to wit: One fourth part, at the death of all of my said children and wife, I give, devise and bequeath to the trustees named in Item 5 of this will, of what I have designated as the "John Huntington Art and Polytechnic Trust", and their successors forever, in trust for the same uses and purposes specified in said item. [Emphasis supplied.]

On March 25, 1902, the executors of the estate of John Huntington filed their final report and settlement in the Probate Court, reporting that they had paid all the indebtedness of the estate and had turned over to themselves as testamentary trustees under the will all the remaining property in their hands. On April 5, 1902, the court approved the report and settlement, ratified the actions thereunder and discharged the executors. Thereafter the testamentary trustees held possession of the property under the terms of the will.

The widow of John Huntington died several years before 1928. Hannah Huntington Hord, daughter of the decedent and mother of the petitioner, died many years prior to 1928. After her death the petitioner received the entire income which would have gone to his mother, pursuant to the terms of the will.

The father of Lillian H. Bishop and son of John Huntington died before 1928. After his death his daughter received the entire income which her father would have received.

Margaret Huntington Smith, daughter of the decedent and mother of Margaret H. McCarthy, was the last survivor of wife and children of John Huntington. She died on June 8, 1928. At that time the three grandchildren of John Huntington, Lillian H. Bishop, Margaret H. McCarthy and the petitioner, being all of such grandchildren, were over 21 years of age. The entire property in the hands of the testamentary trustees before and at the time of the death of Margaret Smith consisted only of personal property.

In April 1928 the testamentary trustees appointed under the will of John Huntington duly made a tax return in accordance with the requirements of the statutes of Ohio, showing the trust property at that time in their possession under the terms of the will. No distribution nor disposition of the said personal property was made by the said testamentary trustees during the month of April 1928. The taxes provided for under the laws of Ohio upon the personal property for the year 1928 were assessed and levied upon the property included in the tax return made by the testamentary trustees.

After the death of Margaret Huntington Smith on June 8, 1928, counsel for the testamentary trustees advised that the distribution of the securities which had been held by the testamentary trustees should be delayed for a brief period until it could be determined whether any estate or inheritance taxes might be assessed thereon by any of the various states in which corporations whose securities were held had been organized.

The beneficiaries consented thereto and such investigation was made in at least 20 states, most of them through personal visit, which required until November 1, 1928, at which time the said counsel advised that the testamentary trustees could safely proceed with a distribution in kind of the securities, provided a portion thereof could remain subject to the control of the testamentary trustees until such time as all questions as to possible claims against the trust estate of whatsoever nature had been settled.

The beneficiaries consented thereto and thereupon and prior to December 31, 1928, the testamentary trustees arranged to have transferred to the beneficiaries all of the assets of the trust estate. They took from the beneficiaries powers of attorney covering a part of the certificates for stock included among such assets. This part of the certificates of stock, together with certain bonds, was placed with the Guardian Trust Co., of Cleveland, Ohio, under an arrangement whereby the beneficiaries were entitled to received the income thereon unless the income was needed in order to meet claims which might arise. That arrangement was made pursuant to the following authorization by petitioner:

NOVEMBER 1, 1928.

Messrs. CHARLES W. BINGHAM,
　　　　WILLIAM B. SANDERS,
　　　　SAMUEL MATHER and
　　　　CHARLES L. MURFEY,
　　　*Trustees of the Estate of John Huntington, deceased,*
　　　　*Cleveland, Ohio.*

DEAR SIRS: Under even date herewith the undersigned joined with other beneficiaries of the Estate of John Huntington, deceased, in requesting you to make distribution of said estate as promptly as possible.

In order to clear up all questions as to inheritance or succession taxes substantially at one time, you have been asked to transfer to the beneficiaries,

pursuant to an agreement for distribution in kind which they have made, the bulk of the securities constituting the trust estate, upon the understanding that when so transferred a portion thereof shall remain subject to your control until such time as all questions as to possible claims against the Estate, of whatsoever nature, have been settled.

In accordance with this understanding I am delivering to you herewith powers of attorney covering certificates of the shares of stock to which I will become entitled under this division.

If at any time you may deem it necessary or advisable to have additional powers with respect to any or all of such shares and shall notify me thereof, I will promptly execute and deliver them.

I request that as soon as it is possible to determine what, if any, inheritance or succession taxes are payable to various taxing authorities, or if any other claim shall come to your attention which in your opinion cannot fully be met from the " retained assets " which you are then holding under the terms of said principal agreement of even date herewith, you notify me or my attorneys thereof. Upon receipt of this information I will promptly advise your attorneys, * * * as to the way in which funds will be provided to meet such taxes or other liabilities.

If at one time or from time to time I shall desire to make use of part of the securities above mentioned in order to obtain a loan thereon for the purpose of meeting such taxes or other liabilities relating to the trust, I understand that you will permit such use providing the amount so to be pledged meets with your approval and the conditions of the pledge or pledges are such as will in your opinion afford you proper opportunity to retain control of the equity in the pledged securities.

It is understood that I may from time to time substitute securities, approved by you or by such officers of The Guardian Trust Company as you may designate, for securities which I may desire to withdraw from this agreement.

If within two (2) weeks from the mailing of your notice as to the amount of any such inheritance or succession taxes, or other liabilities, I shall fail to advise your attorneys as to the way in which funds will be provided, or if, having expressed a desire to arrange a loan, I shall fail to consummate the same within thirty (30) days from the mailing of such notice, or if I shall advise you that it will be my wish to have funds for the payment of these taxes or other liabilities provided from the sale of such of the securities hereinabove mentioned, you are hereby authorized to take such steps as in your judgment may be necessary or proper in order to effect a sale which will produce the funds needed.

\* \* \* \* \* \* \*

I shall be entitled to receive the income on the securities retained hereunder unless circumstances arise which in your opinion shall make it necessary that this income be conserved in order to make it possible to afford you the protection contemplated. The securities after being transferred to me shall be allowed to stand in my name unless for some reason now unforeseen you shall deem it necessary or advisable to have them placed in the name of an agent or representative.

\* \* \* \* \* \* \*

In view of the fact that a number of years will elapse before all of the matters hereinabove mentioned can finally be closed, I understand that at some time you may wish to vest in The Guardian Trust Company, of Cleveland, Ohio, or in your attorneys, Messrs. Squire, Sanders & Dempsey, authority to act on your behalf or in your stead upon matters requiring the exercise of discretion hereunder. Such a plan will be satisfactory to me.

\* \* \* \* \* \* \*

In June 1929 the petitioner, Lillian H. Bishop, and executors of the estate of Margaret H. McCarthy executed the following request form:

Messrs. SQUIRE, SANDERS & DEMPSEY,
1857 *Union Trust Building,*
*Cleveland, Ohio.*
In re: Estate of John Huntington.

DEAR SIRS: You are hereby requested, as attorneys for the Trustees of the Estate of John Huntington, deceased, to authorize The Guardian Trust Company to sell the remaining United States Government securities which it is holding under the agreement of indemnity, dated November 1, 1928, and also certain shares of the Youngstown Sheet & Tube Company preferred stock, to provide funds required to pay my portion of the Cuyahoga County Personal Property taxes for the last half of 1928.

The taxes due the State of Ohio upon the personal property included in the return of the testamentary trustees, as hereinabove set forth, during the year 1929 were paid from funds derived from the sale of certain of the securities held by the Guardian Trust Co., such sale and the application of the proceeds derived therefrom to the payment of said taxes being made at the request of the individual beneficiaries in order to pay their respective portions of such taxes. The total amount so paid as taxes was $145,393.59, of which amount $9,094.68 was charged to the trustees of the John Huntington Art and Polytechnic Trust, and of the remainder $45,432.96 was charged to John H. Hord in accounting for the proceeds from the said sale of securities.

The petitioner resided in 1929 at Cleveland, Ohio, and filed his Federal income tax return for the year 1929 with the collector of internal revenue for the eighteenth collection district of Ohio. In his return he deducted from his gross income the amount of $45,432.96, claiming that amount to be taxes upon personal property paid by him. The respondent upon audit disallowed the deduction. No claim for such deduction was ever made by the testamentary trustees.

The only question presented is whether or not the petitioner is entitled to deduct county personal property taxes of $45,432.96 on securities paid in 1929. The respondent has disallowed such deduction on the ground that " it represents a tax assessed against the John Huntington Estate." Aside from this assertion of the respondent the record does not disclose in whose name the tax was assessed, but it is inferable that it was assessed against the estate of John Huntington, deceased.

It is obvious that the tax was not intended to be levied against the executors of the estate, who were discharged in 1902, but rather against the testamentary trustees, who actually made the return

required by the Ohio statute. That uncertainty, however, is not of vital importance, since we are concerned with determining who was the real taxpayer and, as such, entitled to the deduction for taxes paid, under the provisions of section 23 (c) of the Revenue Act of 1928.[1]

Petitioner argues that upon the death of the last surviving heir of the former generation on June 8, 1928, the trust ceased as a matter of law and he (petitioner) at once came into possession of the property. He argues from this that, since taxes do not " accrue " in Ohio until October 1 of any year and since he had acquired the property prior to that date, when the taxes accrued they were his liability and not that of the trustees. On these premises he contends that he is entitled to deduct the taxes paid by the trustees and charged to his account in 1929.

It may well be doubted whether, under the stipulated facts, petitioner at any time in 1928 ever had possession of the property. Conceding that he had a right to acquire possession at any time after June 8, 1928, it appears that the property was actually left in the hands of the trustees until after December 31, 1928. The stipulation is that " prior to December 31, 1928, the testamentary trustees *arranged to have transferred* to the beneficiaries all of the assets of the trust estate." This is not a stipulation that the property was transfered. Moreover, the testamentary trustees were still functioning as such throughout the year 1928. Thus it could only be by applying a doctrine of constructive distribution and constructive possession that it could be held that the taxpayer acquired the property prior to 1929. But as we view the case it is unnecessary to this decision to rule on the question so presented.

We have had the more fundamental question, in its varying forms, on many occasions. The decisions have been uniformly to the effect that the ownership of the property on the date fixed by state law as the date of tax incidence determines the right of a taxpayer to a deduction under the Federal income tax law. The owner on such basic date is entitled to the deduction for taxes paid by him. A subsequent acquisition in the tax year carries with it no right to such a deduction even though the purchaser pay the taxes. See *Grand Hotel Co.*, 21 B. T. A. 890; *Leamington Hotel Co.*, 26 B. T. A. 1004; *Texas Coca-Cola Bottling Co.*, 30 B. T. A. 736; *California Sanitary Co., Ltd.*, 32 B. T. A. 122; *American Laundry Machinery Co.*, 32 B. T. A. 793. Nor is it material that it is impossible on the basic date to fix the precise amount of the tax. *United States* v. *Anderson*, 269 U. S. 422.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(c) *Taxes generally.*—Taxes paid or accrued within the taxable year except \* \* \*.

Our question is thus resolved into a determination of the basic date for tax incidence in Ohio. The law of Ohio as it stood in 1928, section 5366, General Code, was in part as follows:

In order to facilitate the listing of personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, each person required by law to list the same shall make a return thereof under oath to the county auditor on the second Monday in April, or on or before the first day of May of any year, the same to be made on the blanks prescribed by order of the state tax commission for such purposes, etc.

Section 5372–1 provided:

*Listing of property held in trust capacity or fiduciary relationship.*—Personal property, moneys, credits, investments in bonds, stocks, joint stock companies, or other wise in the possession or control of a person as parent, guardian, trustee, executor, administrator, assignee, receiver, official custodian, factor, agent, attorney or otherwise, on the day preceding the second Monday of April in any year, on account of any person or persons, company, firm, partnership, association or corporation, shall, except as otherwise provided, be listed by the person having the possession or control thereof and be entered upon the tax lists and duplicate in the name of such parent, guardian, trustee, executor, administrator, assignee, receiver, official custodian, factor, agent, attorney or other person, adding to such name words briefly indicating the capacity in which such person has possession of or otherwise controls property, and the name of the person, estate, firm, company, partnership, association or corporation to whom it belongs; * * *

Section 5671, General Code, provided that the lien of the state for taxes should attach to all real property subject to such taxes on the day preceding the second Monday of April. It provided further that " all personal property subject to taxation shall be liable to be seized and sold for taxes." Section 2583, General Code, provided for a tabulation of such listed property by the county auditor, with description thereof. Section 2585 provided that, after being officially advised of the amount of taxes to be levied, the county auditor should determine the amount to be levied on each tract of land and against the personal property listed. Section 2475 provided that on or before October 1 of each year the county auditor should deliver to the county treasurer (the tax-collecting officer) a duplicate of the tax list.

Conforming to the law of Ohio, the testamentary trustees returned the property in question for taxation in April. At that time they unquestionably held the property in their capacity as trustees and were liable for taxes thereon. The question arises whether anything that occurred subsequently could cause the tax burden on such property to shift to another. We believe not. As we view the Ohio law, the purpose is to impose a tax on the owner of property on the day preceding the second Monday in April. *Shotwell* v. *Moore*, 129 U. S. 590 (an Ohio case). As to real estate, this is made doubly certain by the provision that the tax lien shall be effective from the day preceding the first day for listing. Moreover, the Ohio Supreme Court

has held that the assessment when later made as required by law dates back to the date when the lien became effective. *State ex rel. Donahey* v. *Rose*, 90 Ohio St. 345; 107 N. E. 760. We see no basis in principle for a holding that the Ohio law contemplated the taxing of the owner of real estate as of the April date but that as to personal property the tax applied as of the later date when the amount of the tax was determined or became due and payable. It has often been said that taxation is a practical matter. It is equally true that taxation should be administered with a view to consistency of treatment. We believe that under Ohio law as it stood in 1928 the ownership of personal property on the day preceding the second Monday of April fixes the tax incidence for the year and that such incidence was not subject to the uncertainty of subsequent transfer of the property.

It may be observed in passing that by amendment of the Ohio General Code, effective June 27, 1931, " * * * all taxable property shall be listed with respect to ownership or control, valuation and taxing districts as of the beginning of the first day of January annually * * *." One half of the tax is payable at the time the return is filed and the balance on September 20. (Secs. 2656 and 5671–1, General Code.)

Our conclusion is that the taxes for 1928 were the taxes of the trustees who listed the property and were not deductible by petitioner.

Reviewed by the Board.

*Decision will be entered for the respondent.*