## HORD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7323.

Circuit Court of Appeals, Sixth Circuit.

March 9, 1938.

Horace Andrews, of Cleveland, Ohio (Andrews, Hadden & Putnam, of Cleveland, Ohio, on the brief), for petitioner.

F. E. Youngman, of Washington, D. C. (Robert H. Jackson and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before HICKS, and SIMONS, Circuit Judges, and RAYMOND, District Judge.

HICKS, Circuit Judge.

Petition by John H. Hord, to review a decision of the Board of Tax Appeals in assessing on redetermination a deficiency of $10,580.15, in income taxes for the year 1929. The question is whether petitioner should be allowed a deduction of $45,432.96 from gross income because of Ohio taxes paid upon personal property for 1928.

The applicable statute, Revenue Act 1928, ch. 852, § 23(c), 45 Stat. 791, 799, 26 U.S.C.A. § 23 note, allows deductions

for taxes paid or accrued within the taxable year.

The facts were stipulated before the Board.

John Huntington died in 1893, leaving a last will in which certain persons were named as executors and as testamentary trustees. The will contained the following provision: "Fourth: At the death of all my said children and my said wife, I give, devise and bequeath to my grandchildren then living three-fourths of all my said estate in the hands of my said trustees, share and share alike, to them and their heirs and assigns forever; but said three-fourths of my estate so given to them shall remain in the hands of my said trustees, *to be held,* managed and controlled by them, *until the youngest of my grandchildren, living at the time of the death of the last survivor of my said wife and children, shall arrive at the age of twenty-one years, when and at which time my said grandchildren shall come into the possession of the same."* (Italics ours.)

On March 25, 1902, the executors made a final settlement as such and turned over to themselves as testamentary trustees all the property then in their hands, and were discharged as executors. The widow of John Huntington died several years before 1928. Margaret Huntington Smith, the last survivor of the widow and children of John Huntington, died on June 8, 1928, and at that time all of the grandchildren of John Huntington were over twenty-one years of age. Petitioner was one of the grandchildren.

In April, 1928, the trustees made a tax return in accordance with the statutes of Ohio, showing the trust property then in their possession, all of which consisted of personalty.

Section 5366-1 of the General Code of Ohio, 1929, provides that the listing and valuation of personal property for taxation shall be made as of the date preceding the second Monday of April, annually, and all personal property, moneys, credits, and investments, except as otherwise provided, shall be listed with respect to the ownership thereof on that date.

Section 5372 provides that personal property shall be listed in the name of the person who was the owner thereof on the date preceding the second Monday in April of each year; and section 5372-1 provides that personal property in the possession or control of a person as parent, guardian, *trustee,* executor, administrator, assignee, receiver, official custodian, factor, agent, attorney or otherwise, on the day preceding the second Monday of April in any year, on account of any person or persons, company, firm, partnership, association, or corporation, shall be listed by the person having the possession or control thereof and be entered upon the tax lists in the name of such person, adding however to such name words briefly indicating the capacity in which such person has possession of or controls the property, and the name of the person, estate, firm, company, partnership, association, or corporation to which it belongs.

Section 5372-3 provides that a person required to list property in behalf of others shall list it separately from his own, specifying the capacity in which he holds it and the name of the person, estate, etc., to whom it belongs.

By sections 5367, 5368 and 2595 it is provided that the county auditor shall be the assessor, that he shall examine and correct the returns and assess the property at its true value in money and deliver on or before the first day of October a duplicate of the tax lists to the county treasurer for collection.

Section 5671 provides that taxable personal property shall be liable to seizure and sale for taxes.

In the absence of contrary declaration of the Supreme Court of Ohio, we think that a comprehensive consideration of these statutes compels the conclusion that the assessment of taxes upon the personal estate of John Huntington for 1928 related to the day preceding the second Monday of April of that year and that the trustees as legal owners were properly assessed therewith because the trust estate had not then terminated, but it does not follow that the assessment against the trustees discharged the beneficiary from all liability for the payment, else the provisions for incorporating in the tax lists the names of the person or persons to whom the trust estate really belongs would be pointless. It seems clear enough that in the event the taxes were not otherwise paid the beneficiaries were required to pay or suffer the sale of the property.

This leaves two questions: Did petitioner pay the taxes for which he seeks

a deduction; and, if so, did he own the property upon which he paid?

Petitioner was one of the grandchildren of John Huntington to whom three-fourths of his estate was bequeathed but the estate was to remain in the hands of the trustees and be managed and controlled by them. The duration and termination of the trust estate is clearly defined in the fourth paragraph of the will. See Young v. Bradley, 101 U.S. 782, 787, 25 L.Ed. 1044. The trust terminated on June 8, 1928. The payment of taxes by the trustees thereafter was not authorized by the will. On that date their powers became restricted to the single duty of placing the beneficiaries in possession of their property. We think that the state anticipated that such or similar situations might arise and to secure more effectively the collection of its revenue burdened the beneficiaries with at least a secondary obligation to discharge the taxes. The trustees recognized the restriction upon their authority and without attempting to act under the will sought and were given the consent of the beneficiaries to delay the distribution of the estate, then in the form of securities until it could be ascertained whether any estate or inheritance taxes might be assessed thereon by any state in which the corporations were organized, the securities of which were held by them.

After an investigation, not completed until November 1, 1928, the petitioner joined with the other beneficiaries in a request to the trustees to make distribution as promptly as possible according to an agreement for distribution in kind which they had made between themselves. Counsel for the trustees advised that the distribution could be safely proceeded with, provided a portion should remain under the control of the trustees until all possible claims against the estate had been settled. This arrangement was consented to by the beneficiaries and on that date, November 1, 1928, petitioner executed to the trustees a power of attorney covering certain certificates of shares of stock to which he would become entitled under the division.

At the same time the other beneficiaries executed similar powers of attorney. These instruments in substance provided that the shares of stock covered by them should be retained by the trustees as the source of a fund out of which to meet any possible liabilities against the trust estate and that petitioners might, by consent, substitute from time to time other securities covered thereby. These powers of attorney had a further provision that if the beneficiaries should wish to have funds for the payment of "these taxes or other liabilities" provided from the sale of the securities mentioned and should so advise the trustees, they were authorized to effect such a sale as would produce the needed funds. It appears that certain United States Government bonds had been substituted for the certificates covered by the original powers of attorney and on July 2, 1929, the beneficiaries, including petitioner, requested the Guardian Trust Company, through its attorneys, to authorize the sale of the Government bonds then held by them to provide funds out of which to pay their respective portions of the taxes here involved. The Trust Company was authorized to act for the trustees by virtue of provisions of the powers of attorney.

The taxes for which petitioner seeks a deduction were paid out of the funds derived from the sale of these bonds by the Trust Company at the request of petitioner. The testamentary trustees never at any time sought a deduction on account of the payment of the taxes. Whatever might be said as to whether the trustees were liable upon the theory that the taxes had been assessed against them prior to the termination of the trust, we think that as a matter of law petitioner was burdened with an obligation to pay and that he in reality discharged the obligation out of his own funds through the agencies created by the consent arrangement of November 1, 1928, the power of attorney of that date and the subsequent requests. It follows that he was entitled to the deduction sought.

The decision is reversed and the case remanded to the Board of Tax Appeals.