ESTATE OF JAMES B. DREW, DECEASED, JOHN DREW, EXECUTOR, AND THE ESTATE OF MARY S. DREW, DECEASED, HENRY PHIPPS HOFFSTOT, JR., EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60189. Filed May 20, 1958.

*Robert H. Sabel, Esq.,* for the petitioners.
*David L. Ketter, Esq.,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in the income tax of James B. Drew, deceased, and Mary S. Drew for the year 1953 in the amount of $6,924.66. Two adjustments were made by the Commissioner, but only one of them was contested. We must decide whether a trustee's fee paid in 1953 by Mary, who was the principal and income beneficiary of a trust which was terminated in 1947, is properly deductible on the joint income tax return for 1953 of Mary and James, deceased.

FINDINGS OF FACT.

Some of the facts were stipulated and are so found.

The petitioners are the Estates of James B. Drew and Mary S. Drew. James and Mary were husband and wife and resided in the city of Pittsburgh, Pennsylvania. James died September 5, 1953.

Mary and the executor of the Estate of James B. Drew, Deceased, filed a joint Federal income tax return for the year 1953 with the collector of internal revenue at Pittsburgh.

On February 2, 1917, William P. Snyder established the "Mary Snyder (Drew) Trust No. 6835," of which Mary was both income and principal beneficiary, and the Pittsburgh Trust Company (predecessor to the Peoples First National Bank and Trust Company) was trustee.

The original corpus of the trust consisted of $200,000 face value of American Telephone and Telegraph Company bonds. The bonds were redeemed in 1924 and the proceeds used to purchase $200,000 face value of Bell Telephone Company bonds. These bonds were in turn redeemed in 1944 and the proceeds used to purchase $100,000 face value of United States Treasury bonds and $100,000 in bonds of various political subdivisions of the Commonwealth of Pennsylvania. Shortly thereafter, in 1944, the United States Treasury bonds were replaced with additional bonds of various political subdivisions of the Commonwealth of Pennsylvania. Interest earned by the bonds of the various political subdivisions was exempt from Federal income tax.

The term of the trust was for 30 years. The trust instrument provided, *inter alia*, that the trustees were to receive and collect the interest and income arising from the corpus of the trust and after deducting the taxes or other charges and the reasonable expenses of the trustee incident to the execution of the trust, to pay over, from time to time, the surplus of the income to the beneficiary, Mary. The trust instrument also provided that at the expiration of the period of the trust, the trustees were to turn over the corpus of the trust to the beneficiary, Mary, "upon the Trustee first being paid the balance due, if any, for its reasonable compensation hereunder."

On February 2, 1947, the trust terminated. During the period of the trust, the trustee received compensation in the amount of $13,-688.64, which was 5 per cent of the income earned by the trust. At the termination of the trust the trustee-bank was entitled to receive an additional $7,470 for its services rendered to the trust.

Upon the termination of the trust, the trustee-bank suggested to Mary that it was interested in retaining her business and that if she would agree to leave the trust corpus with her as an agency account, the trustee-bank would, as an inducement to her, defer the collection of the balance of its trustee's fees until a later date, thus granting to Mary the benefit of the bank's continuing services and the additional income upon the trustee's compensation.

As a result of the bank's suggestion, Mary and the bank executed an agency agreement on May 9, 1947. Disposition of the corpus of the trust was made according to the terms of the agency agreement.

The agency agreement provided, *inter alia*, that in consideration of certain annual charges against principal and income the bank was to hold, manage, administer, and safely keep the property deposited with it and to receive and collect all interest, dividends, rents, profits, and income from the property, and, after payment of the costs, fees, and expenses incurred in the management thereof, to pay the full net amount of the income to Mary.

The agency agreement also provided:

SIXTH: In addition, upon termination of the agency PEOPLES FIRST NATIONAL BANK & TRUST COMPANY shall be entitled to receive Seven Thousand Four Hundred Seventy Dollars ($7,470) from the investments for its services under Deed of Trust created by William Penn Snyder for Mary Snyder Drew, which terminated February 2, 1947, and for which no compensation has been taken.

The agency agreement was terminable at the option of either Mary or the bank on 30 days' written notice to the other party, and in any event it was to be terminated upon receipt of notice by the bank of the death of Mary.

On or about December 4, 1953, Mary terminated the agency. During the period of the agency account the bank received compensation in the amount of $3,537.78.

Upon the termination of the agency account, Mary paid to the bank, $7,470 in accordance with paragraph Sixth of the agency agreement.

The $7,470 paid by Mary to the bank was claimed as a deduction on the joint income tax return filed by Mary and James, deceased, for the year 1953. The Commissioner disallowed such deduction in its entirety.

### OPINION.

The only issue for decision is whether the trustee's fee of $7,470 paid by Mary in 1953 after the trust was terminated is properly deductible on the joint income tax return for 1953 of Mary and James, deceased. We think it is not.

The additional trustee's fee of $7,470 was earned by the trustees during the 30-year term of the trust. The trust instrument provided that upon the termination of the trust the corpus was to be distributed to Mary "upon the Trustee first being paid the balance due, if any, for its reasonable compensation" in administering the trust. Thus the trustee's fee was payable by the trust from its corpus and if it had been so paid it would have been deductible on the income tax return of the trust. *Trust of Bingham* v. *Commissioner*, 325 U. S. 365 (1945). It would not have been deductible by Mary, as beneficiary, on her income tax return, *Anstes V. Agnew*, 16 T. C. 1466 (1951).

However, collection of the fee was not made by the trustee-bank from the corpus, but was postponed in order to retain Mary's busi-

ness. An agency account was established in which the bank, as agent, reserved the right to take its trustee's fee from the investments held under the agency account. When Mary terminated the agency in 1953 she paid the bank its trustee's fee and claimed a deduction for it on the joint income tax return filed by her and her husband's executor for that year.

Petitioners argue that as a result of the above transaction the bank waived its claim for commissions against the trust corpus and substituted Mary as the party liable for them and thus the obligation became personal to Mary. They point out that Mary actually paid the trustee's fee from her own funds a substantial period of time after the termination of the trust and that Mary allegedly did not pay the fee as a mere volunteer. Therefore, they argue, Mary was the proper party to claim the deduction.

Petitioners' argument is not convincing. It is well recognized that a trust and its beneficiaries are separate taxable persons. *Anderson* v. *Wilson*, 289 U. S. 20 (1933). Petitioners lose sight of the fact that the trustee's fee was earned during the term of the trust and was a proper charge against the corpus. The commissions paid by Mary were not imposed upon her, but were imposed upon the trust. Mary may not deduct the expenses of another. Nor does the fact that she might have contractually assumed the burden of the commissions make them deductible by her. See *Magruder* v. *Supplee*, 316 U. S. 394 (1942). We hold that Mary is not entitled to a deduction for the commissions even though she paid them from her own funds subsequent to the termination of the trust. *Anstes V. Agnew, supra.* See also *United States* v. *Norton*, 250 F. 2d 902 (C. A. 5, 1958).

Petitioners rely on *Hord* v. *Commissioner*, 95 F. 2d 179 (C. A. 6), reversing 33 B. T. A. 342; *Estate of John Edgerly Morrell*, 43 B. T. A. 651; *Martin Thomas O'Brien*, 47 B. T. A. 561; and *Estate of Mary Rumsey Movius*, 22 T. C. 391. We do not think those cases are pertinent here. In each of them the beneficiary was allowed a deduction for taxes assessed against the trust property on the ground that had such taxes not been paid the trust property would have been lost or the beneficial interest impaired. In the instant case the payment involved was for commissions earned by the trustee. Had the commissions never been paid by Mary, she still would have received all of the trust property to which she was entitled, i. e., the property remaining after payment of the termination fee out of trust corpus. As we see it, the payment made by Mary was for services rendered the trust which properly should have been satisfied out of corpus before distribution. We hold petitioners are not entitled to deduct the amount which Mary paid out of her personal funds to satisfy the trustee's claim.

*Decision will be entered for the respondent.*