ESTATE OF ARNOLD WINDSBERG, DECEASED, LOIS TALBOT BROWN WINDSBERG, EXECUTRIX, AND LOIS TALBOT BROWN WINDSBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Windsberg v. Commissioner
Docket No. 4997-76.
United States Tax Court
T.C. Memo 1978-101; 1978 Tax Ct. Memo LEXIS 415; 37 T.C.M. (CCH) 455; T.C.M. (RIA) 780101; March 13, 1978, Filed William L. Stauffer, Jr., for the petitioners. Joyce H. Errecart, for the respondent. DAWSON
MEMORANDUM FINDINGS OF *416 FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $1,792.72 in petitioners' Federal income tax for the year 1971 and an addition to tax of $1,206.69 under section 6653(b), Internal Revenue Code of 1954. [1]
Three issues are presented for our decision: (1) Whether the petitioners realized a long term capital gain of $3,457.38 from the sale of a vacation cottage in 1971 or whether the sale resulted in a loss of $6,414.28; (2) whether petitioners are entitled to deduct administration expenses of estates in 1971 in the amount of $406.25; and (3) whether any part of the underpayment of income tax for the year 1971 was due to fraud with intent to evade tax by the decedent, Arnold Windsberg. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Only those facts which are deemed pertinent and relevant to the issues involved herein are set forth below. Lois Windsberg, individually and as executrix of the Estate of Arnold Windsberg, was a legal resident of Fairfax, Virginia, when *417 the petition was filed in this case. Arnold and Lois Windsberg were husband and wife whose joint Federal income tax return for the year 1971 was received at the Memphis Service Center of the Internal Revenue Service on March 13, 1973. Arnold Windsberg, a graduate of the New York University School of Law, was an employee of the Internal Revenue Service. He first served as an estate tax examiner in the Newark, New Jersey, office. In 1965 he was transferred to the National Office where he was employed as a technical analyst or tax law specialist. His responsibilities were to asist attorneys in preparation of estate or gift tax cases for trial, to prepare recomputations of estate, gift, excise, and employment taxes, and to respond to correspondence concerning the handling of technical issues by Internal Revenue Service personnel. In 1957, while they were living in Orange, New Jersey, Mr. and Mrs. Windsberg visited Sky Farm, a private vacation community in Bernard's Township about an hour's drive from their Orange residence. They became members of the community and visited Sky Farm most weekends during the spring and summer of 1958 and 1959. Ernest Eastline owned a small *418 wood cabin at Sky Farm. It contained a bedroom, living room, a small kitchen and a storage space. The cabin was furnished with a range and refrigerator in the kitchen, a bed, chest of drawers, table and some chairs. The walls were finished, and the floors were bare wood except in the kitchen, where there was linoleum. At the entrance to the cabin, there was a porch of wood planking. Mr. Eastline died in 1959. On June 25, 1959, Arnold and Lois Windsberg entered into a contract to purchase the cabin and its contents from Richard Eastline, individually and as administrator of the Estate of Ernest Eastline, Dorothy Eastline, and Lilliam Eastline. The closing on the sale took place on October 16, 1959, for a total purchase price of $1,850 for the cabin and its contents. At that time the cabin was in rather poor condition. From 1960 to 1965 the Windsberg family used the cabin as a summer residence and visited it on weekends in the spring and fall. During this period they made various repairs and improvements. With respect to the exterior of the cabin, new cinder blocks were installed, mortar replaced, the porch repaired, railing put up, new steps constructed, shrubbery planted, *419 and gravel purchased to construct patio, walkway and parking areas. Certain roof shingles were replaced. With respect to the main room, insulation was placed in the walls, plaster board walls were constructed, wiring installed, ceiling fixtures installed, outlets installed, wall switches installed, subflooring insulation placed, a top floor installed, the ceiling was insulated, plaster board was installed in the ceiling, a disappearing staircase was installed in the ceiling, attic flooring installed, one or both of the windows located in the main room were replaced, and trim, molding and door frames were installed. The top flooring of the main room was asphalt vinyl tile. With respect to the bedrooms, floor covering was installed as were shades and drapes. With respect to the kitchen, a new stove and sink were installed, new cabinets installed, and plumbing replaced. Michael Stecher, a contractor-builder, bought a cottage at Sky Farm in 1954. He met the Windsbergs in 1958 and became close friends with them. Mr. Stecher helped the Windsbergs repair their cabin. He did all the carpentry work and other work without charge for his personal labor. Mr. Stecher lined the inside *420 of the Windsberg cabin with 1,480 square feet of 3/8 inch sheetrock, insulated most of the cabin with 1,300 square feet of insulation, installed two new light fixtures, repaired some windows and the porch, installed an interior door, and put flooring in the living room. The materials for these repairs were purchased by Arnold Windsberg. The cost of the sheetrock was about four cents per square foot, or $59.20. The cost of the insulation was about five cents per square foot, or $65. The light fixtures cost approximately $19. The interior door cost $8. The flooring cost $51.20. Mr. Stecher also installed some cutoff boards to make an attic storage area. He installed an attic door, which he purchased for $27. Arnold reimbursed him for the cost of the door. In addition, Mr. Stecher rebuilt a closet in the large bedroom of the cabin by moving shelves and a door, at no cost to the Windsbergs. Mr. and Mrs. Windsberg obtained an old outhouse from the Sky Farm community. Mr. Stecher installed plans in the outhouse for a floor and a deck.
The highest price paid for a Sky Farm cabin in the 1960's was approximately $5,000, which was paid for a cabin that was more valuable than the *421 Windsberg cabin. No Sky Farm dwelling had a bathroom. Cabins at Sky Farm could only be sold to members of the community who had been in good standing for at least one year prior to purchase. This requirement depressed the fair market value of cabins at Sky Farm. In 1965, when Arnold was transferred to Washington, D.C., the Windsbergs moved to Alexandria, Virginia, 250 to 300 miles from Sky Farm. After 1965, he and Lois visited their Sky Farm cabin five or six times. The cabin was rented once to Joseph Shaw, the community's caretaker for no more than one season. Arnold and Lois Windsberg sold their cabin to Philip and Doris Pace on June 19, 1971, for a purchase price of $3,950. Arnold handled all financial matters for the Windsberg family, including the preparation of their income tax returns. He was also responsible for mailing all personal and business correspondence for the family. Lois Windsberg was only generally aware of the family's financial circumstances.
Arnold kept tax return information in his study and in storage in the basement of their residence. In 1969, when the Windsbergs moved from Alexandria to Fairfax, Virginia, he was responsible for moving all *422 tax return information. Mr. and Mrs. Windsberg claimed deductions for depreciation and other expenses incident to the holding of rental property, identified as the Sky Farm cabin, on their joint Federal income tax returns for the years 1967 through 1971. They also deducted various travel expenses to the Sky Farm cabin during the years 1967 through June of 1971. On their 1971 Federal income tax return, Arnold and Lois Windsberg claimed an opening basis in the Sky Farm cabin in 1965 of $12,000, which was reduced by $2,600 for depreciation, including $200 for depreciation attributable to the period January 1, 1971 to May 31, 1971, and increased by $100 for "nominal value for interest in land" to arrive at $9,500 adjusted basis. The gross sales price of $3,950 was reduced by claimed expenses of $392.62 to arrive at an amount realized of $3,557.38. They claimed a loss on the difference between adjusted basis and the amount realized, $5,942.62, which was claimed as an ordinary loss from rents and royalties. They further claimed $271.66 as expenses attributable to rental property upon the Sky Farm cabin for the period of January 1, 1971 to May 31, 1971. These claimed expenses consisted *423 of taxes ( $120), telephone and utilities ($20.06), repairs ($22.03), travel ($98.57), miscellaneous ( $10), and advertising ( $1). Respondent allowed only the $120 for taxes. In their Federal income tax return for 1971 the petitioners reported gross income of $20,341.64. On May 28, 1964, the Windsbergs entered into an agreement with Sky Farm Corporation which obligated them to sell their cabin to the corporation on certain conditions at a price equivalent to its fair market value. Michael Stecher estimated that the 1965 replacement cost of the cabin, in accordance with building code standards, was approximately $12,000. Arnold Windsberg was uncooperative with respondent's agents when contacted by them concerning his Federal income tax return for 1971. He also misstated some of the facts to them. Arnold Windsberg was the executor of the estates of his parents, Sanford and Anna Windsberg. He and Lois Windsberg deducted $406.25 for the estates' administration expenses from their 1971 Federal income tax return. ULTIMATE FINDINGS OF FACT 1. Petitioners presented no documentary evidence to substantiate their claimed adjustments to the basis of the Sky Farm cabin. They *424 have failed to establish that they expended in excess of the $1,000 allowed by respondent to improve the Sky Farm cabin. 2. Petitioners realized a taxable gain of $1,728.69 on the sale of the Sky Farm cabin in the year 1971. 3. Petitioners were not entitled to claimed depreciation and rental expenses for the Sky Farm cabin in 1971. 4. Petitioners were not entitled to claimed deductions in 1971 for administration expenses of estates. 5. Respondent has failed to prove fraud on the part of Arnold Windsberg by clear and convincing evidence. OPINION 1. Burden of Proof. The burden of proof with respect to the basic deficiency rests with the petitioners. On the other hand, the burden of establishing fraud falls upon the respondent, and he must carry that burden by clear and convincing evidence. These are two separate burdens and must be distinctly kept in mind because both sides may fail in their respective burdens. Cf. Drieborg v. Commissioner,225 F. 2d 216 (6th Cir. 1955); Hollman v. Commissioner,38 T.C. 251, 259 (1962). 2. Deficiency--Adjustments to Basis of Sky FarmCabin. This issue is entirely factual. Notwithstanding *425 conscientious efforts by counsel for both parties, we find the evidence offered by petitioners somewhat elusive and unreliable. Therefore, on this record, we conclude that the petitioners have failed to carry their burden of proving error in respondent's determination. Many of the improvements made to the Sky Farm cabin between 1959 and 1961 consisted of repairs and the personal labors of Arnold and Lois Windsberg, neither of which are capitalized. They included cleaning, patching, poisoning, scraping tar paper from the porch, removal of old paint, repainting, repairing the foundation piers, and installing shades and drapes. The capital improvements, which were confirmed by Michael Stecher, consisted of lining the inside of the cabin with sheetrock, insulating most of the cabin, installing two light fixtures, installing an interior door, placing flooring in the living room, placing linoleum on the floor of the small bedroom, spreading gravel for a parking area and pathways, installing an attic storage area and attic storage door, rebuilding a closet in the larger bedroom and obtaining an outbuilding. Mr. Stecher testified that the cost of the materials was about $230. He *426 did the carpentry work and did not charge the petitioners for his services. He did not estimate costs for the linoleum in the small bedroom and for the gravel on the driveway and pathways. There were other relatively minor improvements such as a new kitchen drain system, a new window and an attic vent. This Court has previously invoked the rule of Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), to determine additions to basis of property where it is established that improvements were made, expert opinion was received as to the value of the land, and the taxpayer made reasonable estimates of the cost of improvements. Herbster v. Commissioner,T.C. Memo. 1963-323. Petitioners urge us to apply the Cohan rule here. We cannot do so in the absence of any estimates of costs by Lois Windsberg and with testimony from Mr. Stecher concerning the low costs of the improvements. Under the circumstances the $1,000 amount allowed by respondent for the improvements appears to be adequate. Accordingly, we hold, as reflected in our ultimate findings of fact, that the petitioners had a taxable gain of $1,728.69 resulting from the sale of the Sky Farm *427 cabin in 1971. 3. Depreciation and Rental Expenses. Section 183(b)(2) of the Code provides that in the case of an activity not engaged in for profit, a deduction, which would be allowable only if such activity were engaged in for profit, shall be allowed only to the extent that gross income derived from such activity for the taxable year exceeds the deductions allowable whether or not such activity is engaged in for profit. Section 1.167(a)-2, Income Tax Regs., provides that no deduction for depreciation shall be allowed on a building used by the taxpayer solely as his residence. The Windsbergs purchased the Sky Farm cabin on October 16, 1959, and sold it on June 19, 1971. Throughout this period they rented it only once, for no more than a season. From 1960 to 1965 the Windsberg family used the cabin as a fulltime summer residence and weekend spring and fall residence. After moving to Alexandria in 1965, they visited the cabin five or six times. In 1971 they did not report any rental income from the Sky Farm cabin on their Federal income tax return. Accordingly, we hold that the petitioners are not entitled to the depreciation and rental expenses claimed with respect *428 to the property in 1971. 4. Deductions Claimed for Administration Expenses of Estates. Petitioners deducted $406.25 for what they termed administration expenses of the estates of Sanford Windsberg and Anna Windsberg. These expenses were identified on the 1971 return as consisting of court fees, travel expenses, towing, storage, telephone, stationery and postage. Petitioners have presented no evidence or explanation concerning the deduction of these amounts. It is now settled that the administration expenses of estates are deductible from estate tax returns, and they are not deductible from the fiduciary's individual income tax returns. Prior to enactment of the Internal Revenue Code of 1954, attempts were made by individuals to deduct administration expenses of estates and trusts on individual returns. This Court disallowed such deductions from individual income tax returns where it found that the expenses were for obligations of the estate or the trust. Estate of Drew v. Commissioner,30 T.C. 335 (1958); Agnew v. Commissioner,16 T.C. 1466 (1951). In 1954 section 642(h) was enacted. It provides that if an estate or trust has *429 a net loss carryover upon termination of the estate or trust, then the carryover shall be allowed as a deduction to the beneficiaries succeeding to the property of the estate or trust. This provision appears to have removed the temptation for claiming the estate's deductions on an individual's return since there has been a paucity of post-1954 litigation on the issue. On their Federal tax return the Windsbergs described the deductions as administration expenses of the estates. These expenses of administration of the estates are obligations of the estates. If deductible, the expenses are deductible only by the obligated taxpayers, i.e., the estates. Accordingly, we hold that these administration expenses are not deductible on the individual Federal income tax return of petitioners. 5. Addition to Tax under Section 6653(b).As the facts disclose, Arnold Windsberg incorrectly reported a loss on the sale of the Sky Farm cabin in 1971. Because of the errors he made with respect to the adjustments to the property's basis, a relatively small gain, rather than a loss, was realized. This resulted in an understatement of income. Respondent links the understatement with Mr. Windsberg's *430 alleged knowledge and experience and his lack of cooperation and candor with respondent's agents to charge that a part of the underpayment of tax was due to the fraud of Arnold Windsberg. Fraud is never presumed. It must be proved by respondent by clear and convincing evidence. Carter v. Campbell,264 F. 2d 930, 935 (5th Cir. 1959); Green v. Commissioner,66 T.C. 538, 549 (1976); Iley v. Commissioner,19 T.C. 631, 635 (1952). The existence of fraud is a question of fact to be resolved upon consideration of the entire record before us. Gajewski v. Commissioner,67 T.C. 181, 199 (1976). Neither gross negligence nor mere suspicion of fraud will suffice. See, e.g., Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941); Ferguson v. Commissioner,14 T.C. 846, 849 (1950). There are various aspects of the record in this case which cause us to conclude that fraud has not been established. Some of the usually strong "badges" of fraudulent intent seem to be missing, especially since we do not have the decedent's side of the story.It is easy for respondent to charge fraud in a *431 situation like this. A dead man cannot strike back. After applying the foregoing principles and evaluating the testimony of the witnesses and the documentary evidence, we are left with such troubling and lingering doubts that we cannot find that fraud has been proved by clear and convincing evidence. As the Court of Appeals said in Davis v. Commissioner,184 F. 2d 86, 87 (10th Cir. 1950): Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion. * * * [Citations omitted.] Arnold Windsberg's education and experience would certainly justify the conclusion that he should have known better and that he was negligent--indeed, grossly negligent. But these elements do not constitute proof that he did know better and, therefore, that his return was fraudulent. We do not perceive in this record the bad faith, the intentional wrongdoing and the sinister motive that are the necessary indicia of fraud. Accordingly, in view of the burden of proof, we have made an ultimate finding of fact as to the absence of *432 fraud. To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩