T.C. Memo. 2002-6


UNITED STATES TAX COURT


ROBERT GRIFFIN AND JULIA GRIFFIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7315-00.                    Filed January 8, 2002.


<u>James Allen Brown</u>, for petitioners.

<u>H. Elizabeth Downs</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  For taxable years 1995 and 1996, respondent determined deficiencies of $47,775 and $53,144, respectively, in petitioners' Federal income taxes.  The sole issue for decision is whether petitioners are entitled to deduct as real property taxes, or as business expenses, amounts paid by petitioner husband (petitioner) with respect to properties owned

by two partnerships in which petitioners' wholly owned S corporation was a partner.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioners are married.  When they petitioned this Court, they resided in Greenwood, Arkansas.

During 1995 and 1996, petitioners jointly owned 100 percent of the stock of Griffin California Enterprises, Inc. (Griffin California), an S corporation as defined by section 1361(a)(1). In turn, Griffin California owned 60 percent of each of two partnerships (the partnerships):  Orange Tree Commerce Center Partnership (Orange Tree) and Solano Commercial Investors, a California Partnership, d.b.a. Texas Jacks (Texas Jacks).

During 1995 and 1996, each of the partnerships owned commercial real property in Vacaville, California.  Orange Tree owned Orange Tree Plaza, a small shopping mall.  Texas Jacks owned a western dance hall.  Petitioners personally owned no interest in these real properties, other than indirectly through their ownership of Griffin California.

On or about April 18, 1991, Orange Tree borrowed $6,251,000 from Napa Valley Bank (the Orange Tree loan) for the purpose of

constructing Orange Tree Plaza.  The note was secured by the Orange Tree Plaza property and personally guaranteed by petitioner.

On or about November 19, 1993, Texas Jacks borrowed $1,427,000 from First Northern Bank of Dixon (the Texas Jacks loan).  The note was secured by the Texas Jacks dance hall and personally guaranteed by petitioner.

Sometime before 1995, the City of Vacaville, California, sued Orange Tree and other defendants, not including petitioners, to foreclose liens due to Orange Tree's failure to pay assessments against the Orange Tree Plaza.

During 1995 and 1996, petitioner personally paid delinquent real property taxes that had accrued with respect to the partnerships' Vacaville properties.  These payments (the tax payments) totaled $426,566 in 1995 and $501,742 in 1996.  On the Schedules E, Supplemental Income and Loss (Schedules E), attached to their 1995 and 1996 joint Federal income tax returns, petitioners claimed the tax payments as deductible expenses.[1]

---

[1] On the Schedules E, Supplemental Income and Loss (Schedules E), attached to petitioners' 1995 and 1996 joint Federal income tax returns, the taxes paid with respect to the Vacaville properties were included in amounts claimed as paid with respect to rental property located in Fairfield, Cal. Petitioners have stipulated that the taxes were not in fact paid with respect to the Fairfield, Cal., property or any other property listed on the Schedules E for 1995 and 1996.

On the Schedule E attached to their 1995 return, petitioners reported income or loss from 21 S corporations, including Griffin California.[2] On the Schedule C, Profit or Loss from Business (Schedule C), attached to their 1995 return, petitioners reported $931 net profit from Creekside Manor of Fairfield (Creekside Manor). On Schedules C attached to their 1996 return, petitioners reported a $1,422 net loss from Creekside Manor and $31,382 net profit from Citation Skymaster Shelton Korbel Homes (Citation Skymaster). On the Schedules C, petitioners identified the principal business of both Creekside Manor and Citation Skymaster (the Schedule C activities) as "construction".

Respondent's examination of petitioners' 1995 and 1996 Federal income tax returns commenced October 6, 1999. In the notice of deficiency, respondent disallowed petitioners' claimed deductions for the tax payments but treated the tax payments as capital contributions by petitioners to Griffin California and as deductible expenses of the partnerships, resulting in a flow through of 60 percent of the deductions to Griffin California.

OPINION

Deduction for Taxes Paid Under Section 164

Section 164 allows a deduction for certain taxes, including State and local property taxes. In general, taxes are deductible

---

[2] The Schedule E attached to petitioners' 1996 return does not contain similar detail, but rather lists four S corporations by name (not including Griffin California Enterprises, Inc.), and then references "ALL OTHERS" without further specifics.

under section 164 only by the person upon whom they are imposed. Sec. 1.164-1(a), Income Tax Regs.; see Walsh-McGuire Co. v. Commissioner, 97 F.2d 983, 985 (6th Cir. 1938), affg. an order of this Court.

Petitioners do not contend that the real property taxes in question were imposed upon them, that they owned the real property against which the taxes were assessed, or that they owned any equitable or beneficial interest in the real property that might entitle them to a deduction under section 164. Cf. Hord v. Commissioner, 95 F.2d 179 (6th Cir. 1938), revg. 33 B.T.A. 342 (1935); Estate of Movius v. Commissioner, 22 T.C. 391 (1954); Horsford v. Commissioner, 2 T.C. 826 (1943). Petitioners' ownership of Griffin California does not support a conclusion that the property taxes were imposed on them. Such a conclusion would require inappropriately disregarding Griffin California as a separate corporate entity, see Planters' Cotton Oil Co. v. Hopkins, 286 U.S. 332 (1932), and disregarding, as well, the fact that Griffin California owned only 60 percent of the partnerships. Accordingly, petitioners are not entitled to deduct the tax payments under section 164(a).

Ordinary and Necessary Business Expenses

Although nondeductible under section 164(a), the tax payments may still be deductible under section 162 to the extent that they represent ordinary and necessary expenses of

petitioners' business.  See <u>Stoddard v. Commissioner</u>, T.C. Memo. 1982-720.

As a general rule, a taxpayer may not deduct a payment made on another's behalf unless the payment represents an ordinary and necessary expense of the taxpayer's own business, as distinct from the business of another person or of some other entity in which the taxpayer may have an ownership interest.  See <u>Gould v. Commissioner</u>, 64 T.C. 132, 134-135 (1975); <u>Rink v. Commissioner</u>, 51 T.C. 746, 751 (1969); <u>Lohrke v. Commissioner</u>, 48 T.C. 679, (1967); see also <u>Gantner v. Commissioner</u>, 905 F.2d 241, 244 (8th Cir. 1990) ("A shareholder is not entitled to a deduction from his individual income for payment of corporate expenses."), affg. 92 T.C. 192 (1989).  The cases that have allowed deductions under this rule generally have involved the taxpayer's payment of financial obligations of another party in financial distress and have required the taxpayer to show "direct and proximate" adverse consequences to the taxpayer's own business from failure to pay the other party's obligation.  See <u>Hood v. Commissioner</u>, 115 T.C. 172, 180-181 (2000), and cases cited therein.

Petitioners contend that the tax payments are deductible under section 162 because petitioner paid the delinquent real property taxes to prevent foreclosure on the Orange Tree and Texas Jacks loans (the partnership loans), which he had

personally guaranteed and which were secured by the partnerships' real properties against which the property taxes were assessed.

Under Rule 142(a), the burden of proof is upon petitioners, except as otherwise provided by statute. In certain circumstances, if the taxpayer "introduces credible evidence with respect to any factual issue relevant to ascertaining" the proper tax liability, section 7491 places the burden of proof on respondent with respect to such issue. Sec. 7491(a); Rule 142(a)(2).

Section 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 726. The examination in the instant case began after July 22, 1998. Petitioners contend that the burden of proof is therefore on respondent. Respondent disagrees, contending that petitioners have failed to introduce credible evidence, as required by section 7491(a), regarding "the core factual issue" as to whether petitioners were engaged in a trade or business "distinct from their investment in S corporations or the activities conducted by those S corporations, to which the payment of the taxes at issue

was attributable as an ordinary and necessary expense, or as payment to protect such business."[3]

Section 7491 does not define what constitutes credible evidence. The pertinent legislative history states: "Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)." H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995; see Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

The only evidence regarding the nature of petitioners' business activities consists of petitioner's summary and uncorroborated testimony. He testified, with little elaboration, that he has been a building contractor and land developer for about 30 years, during which time he has developed about one project a year. On cross-examination, he testified that his construction and real-estate development businesses are not separate businesses, but are "all tied together. They're all-- any business I have is--if I--if they are--oftentimes I incorporate, because of the liability aspect. They are Subchapter S if they are."

---

[3] Respondent does not contend that petitioners fail to satisfy other requirements of sec. 7491(a)(2).

Petitioner testified that petitioners owned 100 percent of all but one of the 21 S corporations listed on the Schedule E attached to their 1995 tax return and that all these S corporations were involved in real-estate development or management activities. Petitioner offered no testimony, and the record otherwise contains no evidence, regarding Creekside Manor, listed as a construction business on the Schedules C attached to petitioners' 1995 and 1996 returns, or Citation Skymaster, listed as a construction business on the Schedule C attached to petitioners' 1996 return.

The sparse evidence introduced by petitioners would not be "sufficient upon which to base a decision on the issue", H. Conf. Rept. 105-599, supra at 240, 1998-3 C.B. at 994, as to whether petitioners were individually engaged in a trade or business, within the meaning of section 162, with respect to which the tax payments would represent ordinary and necessary expenses.[4] In the first instance, assuming for sake of argument that petitioners devoted significant time and energy to the many S corporations that they owned, such activity would not necessarily constitute a trade or business of petitioners. See Whipple v. United States, 373 U.S. 193 (1963); Bell v. Commissioner, 200 F.3d 545, 547 (8th Cir. 2000), affg. T.C. Memo. 1998-136. The

_____

[4] Even if the burden of proof were placed on respondent, we would decide the issue in his favor based on the preponderance of the evidence.

evidence introduced by petitioners does not suggest that they were engaged in a regular course of promoting their S corporations for profit on their sale, so as to lend support to an argument that they were engaged in a trade or business with respect to their S corporations, other than as mere investors. See Whipple v. United States, supra; Bell v. Commissioner, supra. There is no evidence that petitioners were employees of the partnerships or of Griffin California, such that their employment therewith might constitute a business that might be jeopardized by their failure to make the tax payments. See Bell v. Commissioner, supra at 548; cf. Gould v. Commissioner, 64 T.C. 132 (1975).

Assuming, for sake of argument, that petitioners acquired and continued to own properties in their individual capacities, as suggested by the Schedules C attached to their 1995 and 1996 returns, there is no credible evidence that the tax payments were made with respect to such activities. To the contrary, petitioners' accountant testified that the tax payments were reported on Schedule E because they were attributable to petitioners' S corporations.

Further assuming, for sake of argument, that petitioners were engaged in one or more trades or businesses in their individual capacities, there is no credible evidence that the tax payments represented ordinary and necessary expenses of any such

trades or businesses.  Petitioners contend that the makers of the partnership loans looked to petitioner to satisfy the delinquent tax assessments on the partnerships' Vacaville properties and that if petitioner had not made the tax payments, he would have been "subject to risk if a judgment was brought against him which could be executed against his other property holdings."[5]  Apart from petitioner's uncorroborated testimony, however, the record is devoid of evidence to support this contention.  Petitioners have failed to introduce credible evidence to establish that petitioner's failure to make the tax payments would have caused direct and proximate adverse consequences to any businesses conducted in petitioners' individual capacities.  See Hood v. Commissioner, 115 T.C. at 180-181; Cloud v. Commissioner, T.C. Memo. 1976-27.  Indeed, there is no evidence to show that the partnerships themselves, which presumably were primarily liable for paying the property taxes and for repaying the loans, lacked resources to satisfy such liabilities.

Petitioner testified that he made the tax payments "in order to preserve my integrity and my standing with the bank, and

---

[5] It is unclear from the record why a judgment could be executed against petitioner if the taxes went unpaid.  If we are to assume that it would be on account of his guaranty of the mortgage notes, it is unclear that petitioner entered into the guaranty for a business purpose so as to entitle him to a business expense deduction pursuant to sec. 162.  Moreover, petitioner has not shown that his subrogation rights against his corporation or partnerships were worthless within the meaning of sec. 166.

my good name, my goodwill." There is no evidence to indicate, however, to what extent petitioner's failure to make the tax payments would have resulted in any damage to his reputation or creditworthiness. Petitioners have introduced no credible evidence to show that petitioner made the tax payments to protect the reputation of any business operation conducted in petitioners' individual capacities. On the basis of petitioner's testimony, we are unable to conclude that the tax payments would have represented ordinary expenses to advance any business carried on in petitioners' individual capacities, as opposed to capital outlays to establish or purchase goodwill or business standing, see Welch v. Helvering, 290 U.S. 111 (1933); Koree v. Commissioner, 40 T.C. 961, 965-966 (1963), or contributions to the capital of Griffin California (consistent with respondent's characterization in the notice of deficiency), see Gantner v. Commissioner, 905 F.2d at 244.

Petitioners have failed to introduce credible evidence that they were engaged, in their individual capacities, in a trade or business for which the tax payments would have represented ordinary and necessary expenses. Consequently, we sustain respondent's determination.

To reflect the foregoing,

Decision will be entered

for respondent.