Gertrude B. Casey and John F. Casey v. Commissioner.
Casey v. Commissioner
Docket No. 1382-62.
United States Tax Court
T.C. Memo 1965-282; 1965 Tax Ct. Memo LEXIS 48; 24 T.C.M. (CCH) 1558; T.C.M. (RIA) 65282; October 26, 1965
*48 On the facts, held: (1) Payments to parochial schools attended by petitioners' children for their tuition are not contributions to a church organization, but are nondeductible personal expenses. Other payments to organizations of the schools were not shown to be charitable contributions and are not deductible; some alleged charitable contributions, not substantiated; but small payments to a school fund for Brothers on the staff who are not allowed to accept gifts were charitable contributions and are deductible. (2) Amounts withheld from salary of Gertrude, a public school, part-time teacher, for payment to her credit into the Illinois Pension and Retirement Fund are not deductible. (3) Part of residence of petitioners was not held for the production of income in the taxable years, and no deductions are allowable for any depreciation or costs of heat, repairs, and maintenance. (4) Gertrude was the equitable owner of the residence property. She is entitled to deductions in 1957 and 1959 for the real estate taxes, which she paid. (5) Various deductions disallowed for lack of substantiation, or because they were nondeductible personal expenses, or were not allowable, including estimates *49 of sales and gasoline taxes, uniforms used by children at school, premium for a judgment bond, and medical expenses. Gertrude B. Casey and John F. Casey, pro se, 7755 S. Honore, Chicago, Ill. Sheldon Chertow, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax as follows: Year
Taxpayer
Deficiency
1957
Gertrude and John Casey
$385.93
1959
Gertrude Casey
274.59
1959
John Casey
156.10
1960
Gertrude Casey
230.65 The questions are whether the petitioners are entitled to various types of deductions in each year, which are set forth in particular hereafter. Findings of Fact The petitioners, who reside in Chicago, Illinois, filed their returns with the district director of internal revenue at Chicago. They filed a joint return for 1957, individual returns for 1959, and Gertrude Casey filed an individual return for 1960. The petitioners have 4 children; Maurice was born in about 1942 and was about 15 years old in 1957. Robert, born in 1944, was about 13 in 1957. Madonna, born in 1945, was about 12 in 1957, and Alicia, born in 1948, was about 9 in 1957. Gertrude B. Casey, hereinafter referred to as Gertrude, has certificates *50 from the State of Illinois to teach in elementary and high schools. She is a part-time teacher in public schools in Cook County, Illinois, and was a part-time teacher in 1957, 1959, and 1960. John F. Casey, hereinafter referred to as John, is a fireman. In 1957 and 1959, he was employed by the Fire Department of the City of Chicago. 1957: In their joint return for 1957, the petitioners reported total earnings in the amount of $9,793.62; and they took deductions in the total sum of $4,501.75 (which includes a claimed loss of $830), of which respondent disallowed $1,909.51, and allowed $2,592.24, as follows: Items Deducted
Allowed
Disallowed
Loss
$ 830.00
0
$ 830.00
Real Estate Tax
226.50
0
226.50
Sales tax
300.00
$ 260.00
40.00
Gasoline tax
210.00
175.00
35.00
Other taxes
122.14
122.14
0
Auto license
33.50
33.50
0
Interest
517.28
517.28
0
Contributions:
993.81
Churches, other
264.00
St. Rita
277.00
St. Leo
327.00
Teachers' Fund
125.81
Other Deductions:
$1,035.00
Casualty loss
$ 500.00
0
Casualty loss
300.00
0
Fireman's clothes
150.00
0
Other expenses
70.00
$ 15.00
Medical
233.52
200.32
33.20
Totals
$4,501.75
$2,592.24
$1,909.51 The reasons stated in the deficiency notice by respondent for the disallowance of items deducted are in substance as *51 follows: (1) That the deduction of $830 claimed on the return as a loss from rental property is not allowable under sections 162, 165, 212, 262, or any other section of the 1954 Code. (2) That neither petitioner is entitled to a deduction for real estate taxes of $226.50 on property occupied by them because it was not established that title to the property was vested in the petitioners, or in one of them. Sections 162, 164, and 212, 1954 Code. (3) That the deduction taken for sales taxes was excessive to the extent of $40. Sections 164 and 6001, 1954 Code. (4) That the deduction taken for gasoline taxes was excessive to the extent of $35. Sections 164 and 6001, 1954 Code. (5) That deductions taken as contributions were not allowable; that of this total, $604 represented high school tuition for children and other items not substantiated, and $125.81 was a nondeductible payment to a teachers' retirement fund. Sections 162, 170, 262, and 6001, 1954 Code. (6) That a deduction is not allowable in the amount of $15 for the cost of band shoes, ties, spats, etc. , and repairs and cleaning. Sections 162 and 262, 1954 Code. (7) That the deduction for medical expenses is excessive in the amount *52 of $33.20. Section 213, 1954 Code. 1959: For 1959, Gertrude and John filed separate returns. Gertrude reported a gross income of $2,280.80. She did not take on her return any exemption for any of their children. She took deductions in the total sum of $1,641.26, including a claimed loss of $582 relating to their residence at 7755 South Honore Street. John reported gross income of $6,999.96. He took exemptions for 3 of their children. He tooks deductions totalling $3,384.25. The following schedules show the deductions taken by each petitioner, and the deductions allowed and disallowed to each, respectively. Respondent allowed Gertrude deductions totalling $255.83, and disallowed $1,385.43. He allowed John deductions totalling $2,453.47, plus a medical expense deduction of $150.30, and disallowed $930.78. Gertrude Casey, 1959.
Items Deducted
Amount
Allowed
Disallowed
Loss, S. Hnore St.
$ 582.00
0
$ 582.00
Contributions
115.00
$ 65.00
50.00
Sales taxes
100.00
46.00
54.00
Gasoline tax
125.00
87.50
37.50
Bond premium
50.00
0
50.00
Teachers pension
135.00
0
135.00
Medical expense
485.76
8.83
476.93
Educational expense
40.00 * *53 40.00 *
0
I.E.A.
6.50
6.50
0
Reg. Cert.
2.00
2.00
0
Totals
$1,641.26
$ 255.83
$1,385.43
John Casey, 1959.
Items Deducted
Amount
Allowed
Disallowed
Contributions
$ 732.40
$ 162.40
$ 570.00
Real estate taxes
269.28
0
269.28
Real estate taxes
133.96
133.96
0
Gasoline tax
125.00
87.50
37.50
Sales tax
150.00
150.00
0
Auto. license
45.00
45.00
0
Interest
801.11
801.11
0
Other
1,073.50
1,073.50
0
Education
54.00
0
54.00
Totals
$3,384.25
$2,453.47 *
$ 930.78
1960: Gertrude filed a separate return for 1960. In these proceedings, this Court does not have any jurisdiction over John's income tax liability for 1960 and there is no evidence here that the respondent determined a deficiency in his income tax liability for 1960. In her separate return for 1960 Gertrude reported gross income of $2,701.36, and took deductions totaling $2,061.36, which includes a claimed loss of $648 relating to their residence at 7755 South Honore Street. She reported taxable income of $40. The respondent disallowed deductions in the total sum of $1,153.27, and allowed deductions totalling $908.09, as follows: Gertrude Casey, 1960.
Items Deducted
Amount
Allowed
Disallowed
Loss S. Honore St.
$ 648.00
0
$ 648.00
Contributions
265.00
$ 265.00
0
Sales taxes
100.00
100.00
0
Gasoline tax
125.00
100.00
25.00
Road tax
20.00
20.00
0
Drivers license
9.00
3.00
6.00
Other
518.09
420.09
98.00
Medical expenses
376.27
0
376.27
Totals
$2,061.36
$ 908.09
$1,153.27
In *54 general, respondent's reasons for disallowing in 1959 and 1960, items of deductions taken on the respective separate returns of Gertrude and John are the same as the reasons he disallowed the same or similar items deducted on their joint return for 1957; i.e., either the claimed deductions were nondeductible personal expenses, or they are not allowable under any provision of the 1954 Code; or they were not substantiated. For 1957, a joint deficiency notice was mailed to the petitioners, Gertrude and John Casey. For 1959, a deficiency notice was mailed to John. For 1959 and 1960, one deficiency notice was mailed to Gertrude relating to the individual returns filed by Gertrude for 1959 and 1960. Each of the 3 deficiency notices is dated February 6, 1962. Depreciation and Expenses Claimed, 7755 S. Honore Street The family residence of the petitioners is located at 7755 South Honore Street, Chicago. Petitioners have lived there since the latter part of 1944. No part of the house was rented in the taxable years 1957, 1959, and 1960; hence, no income from rents was reported. In the upper part of the house there are 4 bedrooms and 1 bathroom, but there are not any kitchen facilities; there *55 is not a separate entrance for access to this part of the house; access to these rooms is through the rear entrance to the house. The upstairs area where these rooms are located is not separated from the main part of the house, as would be the case if part of the upper area had been made into an apartment with a separate entrance. In 1948 and 1949, Gertrude rented the 4 bedrooms, so that in those years part of the house was devoted to income-producing purposes. Gertrude is unable to recall exactly whether the last year in which any of these rooms was rented was 1951 or 1952, and it is not clear whether some rooms were rented in 1950, 1951, and 1952. In their joint returns for 1953, and 1956, petitioners did not report the receipt of any income from renting the rooms. None of these rooms has been rented since 1952 at the latest. Since 1957, some of petitioners' children have occupied these rooms. In the joint return for 1957 and in the individual returns of Gertrude for 1959 and 1960, a "loss" deduction was claimed relating to the above-described rooms in the respective amounts of $830, $582, and $648. Included in each amount of the claimed loss is a deduction of $300 per year for depreciation, *56 representing an allocation to the portion of the house where the 4 bedrooms are located. The balance of each amount is made up of alleged expenses of repairs, decorating, an allocation of 50 percent of the cost of heating the house, and alleged advertising expense, as follows: Joint Return
Gertrude Casey
Gertrude Casey
1957
Return, 1959
Return, 1960
Depreciation
$300.00
$300.00
$300.00
1/2 Oil for Heat
160.00
180.00
180.00
Repairs
0
10.00
0
Furnace repair
139.33
62.00
0
Water gauge
51.00
0
0
Chimney repair
65.00
0
0
Painting
90.00
0
0
Plaster repair
0
30.00
0
Roof repair
0
0
43.00
Decorating
0
0
100.00
Advertising
25.00
0
25.00
$830.33 *
$582.00
$648.00
Petitioners did not submit any copies of any advertisements of the rooms, either newspaper or any other kind in 1957, 1959, and 1960, or any evidence proving the payment of the alleged advertising expenses. Petitioners failed to prove that the rooms were offered or advertised for rent, or held for the production of income in the taxable years. Real Estate Taxes, 7755 South Honore Street The property at 7755 South Honore Street was owned in 1944 by Cecil and Dorothy Novinger. They sold the property in September 1944. The transaction was under Escrow *57 No. 1002 in the trust department of The Mutual National Bank of Chicago. Harry A. Fischer is Vice-President and Trust Officer of Mutual National Bank, and W. Mary Maze is an employee of the bank in the trust department. The closing date of the sale was October 1, 1944. The selling price of the property was $7,800. There was outstanding a FHA mortgage having a balance on September 30, 1944, in the amount of $5,377.47. There were accrued charges to be paid by the purchaser at the closing in the total sum of $179.87 for accrued taxes, insurance, water, title expense, and part of the escrow fee. The purchaser assumed the mortgage and paid the net amount of the purchase price, $2,422.53, plus the accrued charges of $179.87, or, $2,602.40, plus a charge of $2 for a credit report. There was paid into the escrow, in advance, $2,720.89, which proved to be $118.49, more than was required at the closing. On October 26, 1944, Mary Maze sent a letter from the bank enclosing the statement of the closing, a refund check of the bank in the amount of $116.49, and other papers, to Gertrude Casey. The check was a refund of $118.49, less $2 for a credit report. The letter dated October 26, 1944, was addressed *58 to "Mrs. John Casey, 7755 S. Honore Street", and is as follows: Dear Mrs. Casey: Re: Our Escrow No. 1002. In completion of the above escrow, we are enclosing herewith the following documents: Warranty Deed from Cecil E. Novinger et ux to Helen E. Fitzgerald recorded as Doc. 13364059; Chicago Title & Trust Co. Owner's Policy No. 2870381 for $8,000.00; Statement and check for $116.49, being an overdeposit of sum needed in this connection. Thanking you for your cooperation in the matter, we are Very truly yours, W. Mary Maze TRUST DEPARTMENT. The following is a summary of the statement of account of the closing of the sale of the property under the escrow: Credits to the Escrow Account: FHA Mortgage balance 9/30/44 assumed by purchaser
$5,377.47
FHA interest on mortgage 9/1 to 9/30/44
20.17
Taxes 1/1 to 9/30/44
99.05
Cash deposits in escrow
2,601.67
$8,098.36
Charges to the Escrow Account: Purchase price
$7,800.00
FHA Reserves: Taxes
$110.37
Insurance
22.47
132.84
Hazard insurance
32.17
Other charges
14.86
7,979.87
Refund of credit due purchaser
$ 118.49
Less credit report
2.00
Net refund paid
$ 116.49
On November 16, 1944, Fischer sent a letter to John Casey, 7755 South Honore Street, enclosing a copy of a survey *59 of the property made by a surveying concern. The FHA mortgage, which secured a FHA loan on the property, No. 2638, was handled by Mutual National Bank. From time to time, notices of the principal payments on the mortgage were sent to Mrs. John F. Casey (Gertrude) at the above address, by Edith F. Campbell in FHA department. In June 1952, the final payments were made on the mortgage, and on June 6, 1952, the bank sent a letter addressed to Mrs. Gertrude Casey, at the above address, enclosing several documents relating to 7755 South Honore Street, including the mortgage note, the mortgage and mortgage assignment, all of which were cancelled, a satisfaction of the mortgage, and the mortgage title policy. Helen E. Fitzgerald Spillard, Mildred M. Fitzgerald, and Eileen M. Fitzgerald are Gertrude's sisters. Maurice Michael Casey is one of her children. None of the abovenamed individuals made any payments on the purchase of 7755 South Honore Street, or on the FHA mortgage. Gertrude Casey made the purchase payment of $2,604.40 in the purchase of 7755 South Honore Street, and the payments of the mortgage principal of $5,377.47, and interest. She made the payments in cash. The payments by Gertrude *60 created in her a resulting trust, and she is the equitable owner of the property, and was the equitable owner in 1957, 1959, and 1960. For personal reasons, Gertrude used a nominee as the record holder of the title to the property, namely, the above-named sisters and Maurice, individually at different times. Gertrude did not make a gift of the property to Maurice or any of her sisters. Gertrude paid the real estate taxes on the Honore Street property (here in issue) in 1957 and 1959, in the amounts of $226.50 and $269.28, respectively. The tax bills were addressed and sent to her. A deduction for the taxes paid in 1957 was taken in the joint return for 1957. Gertrude has made claim for a deduction for 1959 for the taxes paid in 1959, to which claim John does not object, for which a deduction was taken on John's 1959 return and was disallowed. Deductions For Contributions Claimed For 1957 and 1959 Respondent disallowed certain deductions taken as contributions on the returns for 1957 and 1959 in the following amounts: 1957
1959
Joint Return: St. Leo $327
St. Rita
277 $604
John's Return: St. Leo, St. Rita, Mother
McCauley $570
Gertrude's Return: St. Leo, St. Rita, Mother
McCauley, Bethlehem
Academy
$ 50
*61 The above amounts were not broken down into smaller amounts on the returns. Respondent disallowed the above deductions because they either were not substantiated, were excessive, or were payments of tuition at parochial schools for some of petitioner's children. St. Leo, St. Rita, Mother McCauley, and Mary Central High School (also called Marian Catholic High School) are parochial schools. Petitioners' son, Robert, attended St. Leo High School in 1957 and 1959. Maurice, in 1957, attended St. Leo High School during the spring term, and St. Rita High School during the fall term; and in 1959 Maurice attended the St. Rita and Mary Central High Schools. In 1959, their daughter, Madonna, attended the Mother McCauley High School. The St. Rita High School has a students' band. Robert was a member of the school band in 1957. There is also a Mothers' Club at St. Rita. At St. Leo High School, there are a Mothers' Club and a Fathers' Club. Brother Stoehr and Brother Sloen are Brothers and teachers at St. Leo. The tuition for a pupil at St. Rita is about $208 for a school year; and the tuition at St. Leo is about $165 for a school year. 1957: On their 1957 joint return, petitioners took a deduction *62 for contributions in the total sum of $993.81, consisting of the items set forth above and below, of which respondent allowed deductions totaling $264, and disallowed deductions totaling $729.81. The disallowed deductions are $125.81, paid to the Illinois teachers' retirement fund (referred to hereinafter); $277, St. Rita; and $327, St. Leo. The allowed deductions do not relate to either St. Rita or St. Leo. The deductions are as follows: Allowed Deductions
Fire Association
$ 48
Heart Fund
3
Illinois Education Assn.
7
Little League
35
St. Patrick Church
60
St. Mary Church
86
St. Sabina Church
25 $264
Disallowed Deductions
St. Rita
$277.00
St. Leo
327.00
$604.00
Ill. Teachers Fund
125.81
$729.81
St. Rita, $277; The only evidence relating to this claimed deduction consists of checks totaling $31, paid as follows: St. Rita's Band, $10; St. Rita's High School, $5; St. Rita's Mothers' Club, $4; and St. Rita's Band Booster's Association, $12. Petitioners did not establish that the payments totaling $31 are deductible contributions under any provision of the 1954 Code, and that they were not nondeductible personal expenses. Petitioners did not prove that they made payments to St. Rita High School in the amount *63 of $246, the balance of the claimed deduction; and they did not prove that if they made cash payments of $246 to the St. Rita school, such payments were not tuition for Maurice. Petitioners are not entitled to a deduction of $277 under any provision of the Internal Revenue Code. St. Leo, $327; Petitioners made payments by checks to the St. Leo High School and organizations and individuals connected with that school $327aggregating, plus an additional sum of $27. They have not made any claim for an additional deduction of $27, or proved that it would be deductible. Petitioners paid $290 to St. Leo High School for tuition for Robert and Maurice. It is nondeductible personal expense. Petitioners paid $30 to the St. Leo Fathers' Club, of which $10 was for a dinner in honor of the St. Leo band and football team, $20and was for the purchase of books of chances on raffles of automobiles. These payments are nondeductible personal expenses. Petitioners paid $15, each, to Brothers Sloen and Stoehr, $30, who were required to turn over these payments to the school principal for a fund for all of the Brothers at St. Leo High School, and could not accept and use, individually, any gifts. These payments *64 are deductible as contributions to a charitable and educational fund under section 170(c)(2)(B) of the Code. Respondent erred in not allowing a deduction of $30; he correctly disallowed $297 of the deduction described as "St. Leo". Contributions Claimed On John's 1959 Return: John deducted $732.40 as contributions, which included deductions of $122.40 for contributions to churches and charitable organizations, and one deduction of $610 described as "St. Leo, Mother McCauley, St. Rita". Respondent allowed deductions of $122.40. Of the $610, he allowed $40, but disallowed $570, as excessive. The allowed deduction of $40 was for a contribution to the building fund of the St. Rita High School. The allowed deductions total $162.40. With respect to the claimed deduction of $570, John produced checks totalling $441, but did not explain the balance, $129. The deduction of $441 is made up of the following items: St. Rita High School
$114.50
St. Leo High School
32.00
Mother McCauley High School
110.00
Mary Central High School
97.50
$354.00
Sisters of Mercy
65.00
St. Leo Fathers' Club
10.00
St. Rita Fathers' Club
5.00
St. Rita Mothers' Club
7.00
$441.00
The payments to the 4 high schools, $354, were tuition for *65 Robert, Maurice, and Madonna, and are nondeductible personal expenses. The payment of $65 to Sisters of Mercy was for books of chances on raffles, which is a nondeductible personal expense. The payments to the Fathers' Clubs at the St. Rita and St. Leo schools, and to the St. Rita Mothers' Club are not explained, and lacking evidence to the contrary, they are held to be nondeductible personal expenses. The unexplained balance of the deduction, $129, is not an allowable deduction because of John's failure to substantiate and to prove that it is an allowable deduction under any provision of the Code. John is not entitled to deductions totaling $570. Contributions Claimed On Gertrude's 1959 Return: The total amount deducted as contributions on Gertrude's 1959 return is $115, of which respondent allowed $65, and disallowed $50 because of lack of substantiation. The disallowed deduction was described on the return as "Bethlehem Academy, McCauley, St. Rita, Leo." Gertrude failed to prove that in 1959 she made contributions totaling $50, which are deductible under any provision of the Code, and she is not entitled to such deduction. Teachers' Retirement Fund Gertrude has been a part-time *66 teacher in elementary schools in Cook County, Illinois, since 1934, and was a part-time teacher during 1957, 1959, and 1960. There were withholdings from Gertrude's salary in 1957 and 1959 in the respective amounts of $125.81 and $135, which were deposited in the Illinois teachers' pension and retirement fund to her credit. In the 1957 joint return, a deduction was taken as a "contribution" of $125.81; and in Gertrude's 1959 return, a deduction of $135 was taken as "Other Deductions", both of which were disallowed. Gertrude did not receive any retirement annuity payments in 1957 and 1959 from the fund, or any refunds, in 1957 and 1959, of amounts she paid into that fund. In each year, the amount in question was part of Gertrude's salary and cannot be excluded or deducted from her gross income under any provision of the Code. Miscellaneous Deductions Claimed, 1957, 1959, 1960 1. Sales and Gasoline Taxes: Petitioners were allowed deductions for sales and gasoline taxes, and were denied part of the deductions claimed, as follows: Sales Tax
Gasoline Tax
Return
Allowed
Denied
Allowed
Denied
1957, Joint $260 $40
$175.00
$35.00
1959, John
150
0
87.50
37.50
1959, Gertrude
46
54
87.50
37.50
1960, Gertrude
100
0
100.00
25.00
Petitioners *67 failed to prove that the sales taxes paid in 1957 were in excess of $260; and Gertrude failed to prove that the sales taxes which she paid in 1959 were more than $46. Petitioners failed to prove that the gasoline taxes paid in 1957 were more than $175; John failed to prove that he paid gasoline taxes in 1959 in excess of $87.50; and Gertrude failed to prove that she paid gasoline taxes in 1959 and 1960 in excess of $87.50 and $100, respectively. Petitioners estimated the amounts of these deductions. Respondent correctly disallowed, because of lack of substantiation, deductions for gasoline taxes in 1957, 1959, and 1960 in the respective amounts of $35 (joint return), $37.50 (John's 1959 return), $37.50 (Gertrude's 1959 return), and $25 (Gertrude's 1960 return). 2. Expenses of Uniforms: In the 1957 joint return, a deduction of $15 was taken, as "Other Deductions", for the cost of shoes, spats, gloves, ties, and the expense of repairs and cleaning the same items. These items were part of the uniform worn by a son of petitioners when he performed in the school band. The petitioners did not submit evidence proving that such expenditures of $15 were made. If such expenditures were made, *68 they do not come within the class of deductible clothing expense, and are nondeductible personal expenses. In her 1960 return, Gertrude deducted, as "Other Deductions", $45 and $53 ( $98) for uniforms. Gertrude did not establish that she was entitled to a deduction of $98, or any smaller amount, for items of clothing which constitute a uniform. She testified that the expenditures were for nurses uniforms and nurses shoes for her daughter, Madonna. In 1960, Madonna was about 15 years old, and if the expenditures were for her, she would have been a student studying nursing. Lacking proof to the contrary, these expenditures are nondeductible personal expenses. Education Expense, 1959 In her 1959 return, Gertrude deducted $40 as required expense of taking courses to maintain her status as a temporary or parttime school teacher. Respondent allowed the deduction of $40, and he allowed an additional deduction of $12.50, a total deduction of $52.50. In John's return for 1959, among "Other Deductions", a deduction of $54 was taken for "Education Reg. Testing." Respondent disallowed this deduction. At the hearing of this case, John did not establish that this claimed deduction was his expense. *69 Gertrude produced checks in support of and made claim for this deduction taken on John's return. But the evidence which she produced does not establish that this expense is not the same item of education expense for which she was allowed a total deduction for 1959 of $52.50. She did not prove that $54 is additional, allowable education expense which she paid and incurred. She did not prove that she is entitled, under her separate return for 1959, to an allowable education expense deduction in excess of $52.50. For failure of proof, the education expense deduction of $54 (claimed on John's 1959 return) is not an allowable deduction for either John or Gertrude. Bond Premium, $50, Gertrude's 1959 Return Respondent denied Gertrude a deduction of $50 for 1959 because it is a nondeductible personal expense under section 262 of the Code, and is not an allowable deduction under sections 162 (business expense), 164 (taxes), or any other section of the Code. On her 1959 return, Gertrude claimed the deduction under "Taxes". Gertrude and her husband have a house in the country which they and their family live in either in the summer or the winter. A carpenter who worked at the country house sued *70 Gertrude for his charges, and put a mechanic's lien on the property. The trial court decided the dispute in the carpenter's favor. Gertrude filed an appeal. She was required to file a bond as security, and in 1959 she paid a bond premium of $50. The appellate court affirmed the lower court's judgment. The carpenter's charges for repairing or remodeling the country house were personal expenses. The cost of the bond premium was a personal expense which is not deductible under any provision of the Internal Revenue Code. Cost of Driver's License, $6, Gertrude's 1960 Return On her 1960 return, under "Taxes", Gertrude deducted $9 as driver's license, of which respondent allowed a deduction of $3, and disallowed $6 as excessive and not allowable under sections 162 (taxes) and 262 (personal and family expenses). In paragraph 4 of the petition, petitioners alleged error in respondent's disallowance of the deduction on Gertrude's 1960 return; but in paragraph 5, a claim was made that a deduction $6of is allowable on John's return for 1960. However, John's income tax liability for 1960 is not before this Court, and the petition has been dismissed for lack of jurisdiction insofar as it relates *71 to John's income tax liability for 1960. At the hearing, Gertrude testified that the deduction of $6 was for drivers' licenses for the 2 sons. Gertrude, in the petition filed in this case, has abandoned her claim for a deduction for 1960 $6of for drivers' licenses for their 2 sons. Respondent's disallowance of this deduction on Gertrude's 1960 return is sustained. Medical Expense Deductions, 1957, 1959, and 1960 1957: Respondent did not question the amounts of the medical expenses stated on the 1957 joint return, but because his determinations resulted in increase in adjusted gross income, recomputation of the amount of the allowable deduction was required under section 213 of the Code, which resulted in a decrease in the amount of the allowable medical expense deduction from $233.52 to $200.32, a reduction of $33.20. Respondent's recomputation was correct on the basis of his determination of the amount of petitioners' adjusted gross income for 1957. However, the Court's determinations that respondent erred in disallowing deduction of $226.50 for taxes, and contributions of $30, will result in a reduction of adjusted gross income, which may require a further recomputation of the amount *72 of the allowable deduction for medical expenses. Such further adjustment of the 1957 medical expense deduction, if any, will be made by the respondent under the general Rule 50 recomputation. 1959: Gertrude did not take any exemptions for their children on her 1959 return. John, on his 1959 return, took exemptions for 3 of the children, but he did not take any deduction for medical expenses. Gertrude, on the other hand, reported on page 2 of her 1959 return medical expenses, as set forth below, with respect to which she took a medical expense deduction of $485.76: 1. Cost of medicines and drugs in
excess of 1 per cent of line 11,
page 1
$183.02
2. Other medical and dental ex-
penses
353.60
3. Total
$536.62
4. Enter 3 per cent of line 11,
page 1
50.96
5. Allowable amount
$485.76 *
Respondent allowed a deduction of $8.83, and disallowed $476.93 of Gertrude's medical expense deduction. He recomputed the deduction on the statement attached to the statutory deficiency notice. He determined that the claimed cost of medicines of $183.02 was not substantiated and, therefore, was not allowable; and he determined that $276.35 was not substantiated, out of claimed medical *73 expenses of $353.60, thereby allowing medical expenses of only $77.25 in his recomputation of the allowable medical expense deduction. Part of the determination results from respondent's general increase in Gertrude's adjusted gross income. In the deficiency notice addressed to John relating to his 1959 return, the respondent determined that John was entitled to a deduction of $150.30 for medical expenses, which deduction was allowed, although on his 1959 return John did not take any deduction for medical expenses. Respondent's explanation of this determination is set forth in the statement which is part of the statutory deficiency notice, as follows: Adjusted gross income per return
- unchanged
$6,999.96
Medical expenses as substantiated
360.30
Less: 3% of $6,999.96
210.00
Allowable medical expense de-
ductions
$ 150.30
As claimed on returns
0
Adjustment
$ 150.30
1960: On her 1960 return, Gertrude took only an exemption for herself and did not take any dependency exemption for any of their children. She took a deduction for medical expenses in the amount of $376.27, which was based upon claimed costs of medicines and drugs in the amount of $458.40, adjusted to $437.87. She did not report any expenses *74 for "Other medical and dental expenses." Respondent disallowed the entire medical expense deduction. Gertrude failed to prove that she is entitled to a deduction for medical expenses for 1959 in excess of $8.83, as determined by respondent, except with respect to any arithmetical additional adjustment which would be proper as a result of any determination by this Court in this proceeding with respect to the revised amount of Gertrude's adjusted gross income for 1959, if any, to be determined by the respondent under Rule 50. Otherwise, respondent's determination is sustained. Gertrude failed to prove that she is entitled to any deduction in 1960 for medical expenses. Respondent's disallowance of the claimed deduction of $376.27 is sustained. Ultimate Findings of Fact 1. 7755 South Honore Street: This property was partially converted to business and income-producing purposes in 1948 and 1949, when rooms were rented, but the conversion to such income-producing purposes ended and was abandoned prior to 1953, and was not resumed. In 1953 and thereafter, up to the present time, including the taxable years 1957, 1959, and 1960, this property was entirely devoted to the personal use of the *75 petitioner, Gertrude B. Casey, and her husband and family, and no part thereof was set apart and devoted to any business and income-producing use. No deductions are allowable for any depreciation, or for any expenses of heat, repairs, and maintenance in 1957, 1959, and 1960. Petitioners (and Gertrude) failed to prove that any part of the property was in fact offered and advertised for rent in 1957 and 1960, and that in fact advertising expense of $25 was incurred and paid in 1957 and 1960 for that purpose. 2. Real Estate Taxes, 7755 South Honore Street: Gertrude Casey is the equitable owner of this property, having paid all of the cash down payment on the purchase in 1944 and all of the mortgage principal, interest, and taxes after the closing of the purchase transaction. She paid the real estate taxes for 1957 and 1959, which were assessed upon her, and she is entitled to a deduction for taxes of $226.50 for 1957, and $269.28 for 1960. 3. Petitioners are entitled to a charitable contribution deduction for 1957 in the amount of $30 for contributions to a fund maintained by the St. Leo High School for the Brothers on the staff of the school. 4. Petitioners are not entitled to deductions *76 for 1957, as determined by the respondent, in the total amount of $1,619.81, exclusive of $33.20, disallowed medical expense deduction. The amount of the medical expense deduction for 1957 which is allowable under section 213 of the Code, will be readjusted by the respondent, if required, under Rule 50. The amount of the allowable medical expense deduction is $200.32, subject to required adjustment, if any; $33.20 is not deductible unless adjusted under Rule 50. 5. The petitioner, John F. Casey, is not entitled to deductions for 1959 in the total amount of $930.78, as determined by the respondent, which sum includes $269.28 real estate taxes on the South Honore Street property, deduction for which has been claimed by Gertrude B. Casey for 1959, and waived by John F. Casey, and is her allowable deduction. 6. The petitioner, Gertrude B. Casey, is not entitled to deductions claimed on her individual return for 1959 in the total amount of $1,385.43, as determined by the respondent; but she is entitled to a deduction for 1959 for real estate taxes which she paid in 1959 in the amount of $269.28, see 2 and 5, supra, for which she has made claim at the trial of this case. Accordingly, the *77 total amount of her allowable deductions for 1959 is $525.11. 7. The petitioner, Gertrude B. Casey, is not entitled to deductions for 1960 in the total amount of $1,153.27, as determined by the respondent. Opinion The petitioners appeared without the assistance of counsel. The Court endeavored to help them, insofar as could be done, and to explain the procedures in this Court, which is not a part of the Treasury Department or the Internal Revenue Service. The respondent's determinations are, as a matter of law, deemed to be prima facie correct. Under the issues presented in this case, the petitioners had the burden of proving by competent evidence the facts, under the fact issues, which would establish that each deduction claimed was, first, an allowable deduction under some provision of the Internal Revenue Code of 1954, and next, that the dollar amount of the claimed deduction was in fact paid. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440. The petitioners, jointly, for 1957, and individually for the other years, had the burden of proving that each determination of the respondent was incorrect. Welch v. Helvering, 290 U.S.Ill. Except with respect to 2 items, the petitioners *78 (jointly and individually, depending on the year involved) were unable to establish error in the respondent's determinations. In several instances, the deduction claimed represented an expenditure for which a deduction is not allowable under any statutory provision; and in other instances, petitioners could not prove that a claimed expense had been incurred and paid or the nature thereof. For example: On each return involved, the petitioner (or petitioners) elected to use the schedule on page 2 of Form 1040 entitled "Itemized Deductions"; but some of the purportedly "itemized" deductions were either estimates, as in the case of sales and gasoline taxes, or rather large amounts which were not broken down into actual itemizations, as in the instance of deductions for contributions. In view of the large dollar amounts and the number of the claimed deductions, there should have been attached to each return a list of the actual amounts paid to specific payees, particularly to schools, but this was not done; and in the case of sales and gasoline taxes, should have been included an explanation of the basis upon which the estimated amounts were computed, which was not provided. At the trial *79 of this case, petitioners attempted to provide breakdowns of total sums deducted by submitting some cancelled checks, but they were neverthless unable to establish in all instances that the various items of claimed deductions were both allowable and representative of actual payments in the full dollar amount of the claimed deductions. Moreover, in several instances, petitioners admitted at the trial that certain claimed deductions were for personal and family expenses, such as tuition, for which no deduction is allowable. Section 262 of the Code provides that no deduction shall be allowed for "personal, living, or family expenses", except as otherwise expressly provided, as, for example, in the case of the restricted allowance for the deduction of medical expenses. On the whole, most of the deductions claimed in each taxable year were for personal, living, or family expenses, which are not deductible, whether or not it was possible to prove the exact amount of the expense for which deduction was claimed. Therefore, the problem of each petitioner in this case was chiefly the taking of deductions which as a matter of law are not deductible, rather than proving that the amount of the *80 claimed deduction had in fact been paid. Either the nature of the claimed deduction was obviously a nondeductible personal and family expense, or the petitioner was unable to prove that it did not come within that category. The cost of the education of a child is a family expense, and the child's incidental expenses of attending a school, such as the cost of participating in school activities, of uniforms and equipment used in school activities, and of uniforms required in school attendance and school training, are, also, family expenses. Almost all of the deductions paid to the schools, St. Rita, St. Leo, Mary Central, and Mother McCauley, represent payments of tuition for petitioners' children. Tuition paid on behalf of children attending parochial or other types of church sponsored schools is not deductible as a contribution or gift to such church or school. Rev. Rul. 54-580, 1954-2 C.B. 97. Other payments in small amounts were for chances on raffles, testimonial dinners, and similar purposes. Some appear to have been dues to a parent's club, which appears to be a social organization. Petitioners failed to prove that such payments qualify as deductible contributions. A contribution *81 is deductible as a charitable contribution under section 170 of the Code only if no consideration or benefit may come to the contributor. Under the following rulings and cases, the deductions claimed for contributions are not allowable. Rev. Rul. 54-565, 1954-2 C.B. 95; Rev. Rul. 56-120, 1956-1 C.B. 514; Commissioner v. Duberstein, 363 U.S. 278; Bogardus v. Commissioner, 302 U.S. 34; Channing v. United States, 4 F. Supp. 33, affirmed per curiam 67 F. 2d 986; John R. Sibley, 16 B.T.A. 915; Henriette T. Noyes, 31 B.T.A. 121; Max Kralstein, 38 T.C. 810. Only in the instance of contributions of $30 to Brothers Sloen and Stoehr is a charitable contribution allowable. We are satisfied that these were not personal gifts to the individuals but were to a charitable fund for all of the Brothers at the St. Leo High School to which the money was turned over, and we have found that these were charitable contributions (joint return for 1957). The Brothers were not allowed to accept and use any gifts of money, individually. To avoid question in the future by the respondent, such contribution should be made payable to the fund or organization itself, and should not be made in the name of *82 any individual Brother. In the matter of the deductions Gertrude claimed for 1957 and 1959 for payments into the Illinois teachers' pension and retriement fund, Gertrude's contentions have not been clearly presented. Amounts were apparently withheld from her salary in each year for payment into the fund, to her credit, but if they were voluntary payments, which is not shown by the evidence, there would not be any difference in the conclusion under this issue. Respondent cites the statute under which the pension and retirement fund was maintained, which was in effect in the above years, Ch. 122, section 34-88, Illinois Annotated Statutes (Smith-Hurd, 1961); now Ch. 108 1/2, section 17-101, Illinois Revised Statutes (1963). The amounts which Gertrude paid into the fund in each year were part of Gertrude's salary as an employee of the Cook County public school system; no contention to the contrary is made. An employee's payments out of salary into a pension and retirement fund ordinarily constitute payments towards the purchase of a retirement annuity which are credited to him, and are not charitable "contributions" for Federal income tax purposes. Under such plan, the employee is expected *83 to subsequently recover his cost of the annuity upon retirement, or under other conditions specified in the plan, and the subsequent payments out of the fund to the employee as a pension, or other retirement payment, are not taxed to the employee until his entire cost has been returned to him. The general rule for purposes of the Federal income tax is that the employee's payments into such fund are neither excludable from gross income (which is not claimed here) nor deductible from gross income. Such payments are comparable to and indistinguishable from payments for the purchase of an annuity contract. Gertrude has not presented any evidence or cited any authority on the basis of which the claimed deductions can be allowed under any provision of the Code. The following authorities indicate the general rule: Rev. Rul. 56-473, 1956-2 C.B. 22; Cecil W. Taylor, 2 T.C. 267, affirmed sub nom Miller v. Commissioner, 144 F. 2d 287; Isaiah Megibow, 21 T.C. 197, 199, affirmed, 218 F. 2d 687, 691; Dismuke v. United States, 297 U.S. 167. On the 1957 joint return and on Gertrude's individual returns for 1959 and 1960, deductions were taken (line 10) as "loss" from the South Honore Street *84 property in the respective amounts of $830, $582, and $648, each amount representing the total sum of deductions taken in Schedules G and I of each return for depreciation in the amount of $300 each year, plus alleged expenses of various items of repairs, maintenance, and a portion of the expense of heating the house. No income was received in each year from the rental of any part of the property, which is the family residence. Section 167(a)(2) of the Code allows a deduction for depreciation of property held for the production of income; section 212 allows the deduction of ordinary and necessary expenses paid for the maintenance of property held for the production of income. But no deduction for depreciation is allowable on a building used by the taxpayer solely as his residence, section 1.167(a)-2, Income Tax Regulations, and the general rule is that the expenses of maintaining, repairing, and heating a building used solely as the taxpayer's residence are nondeductible personal expenses, section 262. Gertrude (petitioners for 1957) did not establish that any of the deductions claimed for each year (any part of the total sum taken as a "loss" deduction) is deductible under sections 167(a)(2) *85 and 212, or that all of the items were not nondeductible personal expenses. Gertrude admitted that no rooms were rented in each of the taxable years. She relies on the point that at one time, in 1948 and 1949, at least, some bedrooms in the upper part of the house were rented; and she has mistakenly assumed that because at some time, prior to 1953 (at the latest) and prior to the taxable years, part of the family residence was held for the production of income and actually rents were received, it follows that such part of the residence acquired a continuing status, for income tax purposes, of "property held for the production of income." This assumption is incorrect. The evidence shows that part of the property was not held for the production of income in any of the taxable years; and although Gertrude contended vaguely at the trial of this case that she advertised rooms for rent in each of the taxable years, she could not present any satisfactory and definite proof that she did, and her self-serving statements to that effect fall far short of the required proof. In Marcell N. Rand, 34 T.C. 1146, we noted that the question whether property is held for the production of income "is *86 not determined solely from the intention of the taxpayer but rather from all of the circumstances of the case." Compare section 1.212-1(c), Income Tax Regulations.
The question under this issue is whether Gertrude at some time prior to 1957 abandoned or gave up holding apart some of the rooms in her residence for income-producing purposes. See William C. Horrmann, 17 T.C. 903, 907. The fact that no income was received from rooms in the taxable years would not alone require the conclusion that the rooms were not held for the production of income, if there was proof that petitioner continuously and actually tried to rent the rooms and kept them separated from any family use, William C. Horrmann, supra.
But where there is not satisfactory proof that petitioner during the taxable years and prior years (back to 1952, at the latest) continuously and actually offered the bedrooms for rent, we must give a different weight to the fact that no rental income was received during the taxable years and prior years. Absent continuous and sustained efforts to rent the rooms, the lack of rental income can be explained as the result of the abandonment of the holding apart of the rooms as a part of *87 the residence devoted to an income-producing purpose. In Charles F. Neave, 17 T.C. 1237, 1243, the general rule was stated, as follows: A taxpayer, who owns and occupies a residence as his own home, is not allowed a deduction for loss on the property or deductions for depreciation on the property, other than for periods during which it is actually rented, [emphasis supplied] unless he abandons the property as his home and converts it to an income-producing use. * * * Since at least 1953 up to the present time, none of the rooms in question has been rented. Gertrude testified that the rooms could not be rented because there were no kitchen and housekeeping facilities and, also, because she would not rent them on any basis other than for at least one month at a time. There is no satisfactory evidence that in spite of difficulties in renting the rooms, the petitioners (and Gertrude) continuously offered the rooms for rent and diligently tried to get tenants. There is testimony that after 1957, some of the children slept in these rooms. The only finding and conclusion which can be made is that although the rooms were rented in 1948 and 1949 (and perhaps at times up to 1953), the holding *88 apart of the rooms from family use and for rent was abandoned several years before 1957 and was not resumed in 1957 or any year thereafter. The conclusion is that the rooms were not held for income-producing purposes in any of the taxable years. Moreover, Gertrude did not present evidence in support of the amounts of any of the deductions claimed for maintenance, repairs, and heat. The main issue in this case is whether Gertrude can take deductions for the real estate taxes on the South Honore Street property. Respondent does not contend that she did not pay the taxes in 1957 and 1959; the evidence shows that she paid $226.50 in 1957, and $269.28 in 1959. The deduction for taxes for 1959 was claimed on John's separate return, but Gertrude made claim for the 1959 deduction for taxes at the trial, to which John did not object, and the Court accepted Gertrude's amendment of her petition to claim the deduction. It is a general rule that taxes may be deducted as such only if they represent a liability of the taxpayer claiming the deduction, and that taxes are deductible by the person upon whom they are imposed. 5 Mertens, Law of Federal Income Taxation, section 27.02; but see Martin Thomas O'Brien, 47 B.T.A. 561, 563; *89 and Hord v. Commissioner, 95 F. 2d 179. The question under this issue is whether Gertrude was the owner of the property upon which the taxes were imposed. Respondent argues that the question is not to be determined by the fact that the tax bills were addressed to Gertrude, for such arrangement, if made with the assessor's office regardless of whether Gertrude was the owner, would not be material. Respondent disallowed the deductions for real estate taxes because the recorded title to the property was not in the name of Gertrude, or of Gertrude and her husband, in the taxable years. Gertrude contends that she is, and in the taxable years was, the actual owner, and that she paid all of the purchase price and mortgage payments. She claims that the record holders of title, who were changed on several occasions, were merely her nominees, for personal reasons. Thus, the dispute resolves itself to the question whether Gertrude was the actual owner in 1957 and 1959. Consideration has been given to Gertrude's evidence in support of her claim that she paid all of the money required in the purchase of the property, the down payment and the payments of mortgage principal and interest, and was *90 the equitable owner in the taxable years and is the equitable owner. The evidence includes letters and reports of The Mutual National Bank, which held the escrow at the time of the purchase and received the subsequent mortgage payments, which are addressed to Gertrude and give support to her claim that she was the actual purchaser and equitable owner. Gertrude did not give the property to Maurice (her son) or anyone else. We believe that all of the evidence of record under this issue must be given considerable weight. Respondent did not call any witnesses or offer any rebuttal evidence; and he did not produce any evidence that any person other than Gertrude had paid for the property or paid the taxes assessed against the property after the purchase in 1944, or in the taxable years; or that Gertrude, in the taxable years, was paying the taxes assessed against the property which were the taxes of another person. It is recognized that Gertrude's proof is not as complete as it might be, but we are satisfied that she paid all of the required consideration and is, and was in 1957 and 1959, the equitable owner. It has been held that the person owning the equitable or beneficial interest *91 in real property and paying the taxes assessed against the property to protect such interest, may deduct, as taxes, the amount of the taxes that he paid, even though the legal title is recorded in the name of another person. The tax bills were addressed to Gertrude; she paid the taxes; and we are unable to conclude that she was paying the taxes of another person either voluntarily or by agreement. We are satisfied that when she paid the taxes on the property she was satisfying her liability and that she paid them to protect her equity, under the alternative that a sovereign authority would take the property for nonpayment of taxes. See the following cases where deductions for taxes paid by the owner of the beneficial or equitable interest in property were allowed: Cornelia C. F. Horsford, 2 T.C. 826; Estate of Mary Rumsey Movius, 22 T.C. 391; Lena L. Steinert, 33 T.C. 447, 450; Martin Thomas O'Brien, supra; Walsh-McGuire Co. v. Commissioner, 97 F. 2d 983. We resolve this dispute in Gertrude's favor and hold that she is entitled to a deduction for 1957 and 1959 for the real estate taxes on the property which she paid in each year. With respect to the claimed deductions for medical *92 expenses, the amount disallowed for 1957 represents only an adjustment of the allowable amount under section 213 in connection with the amount of the adjusted gross income of petitioners for 1957. Under Rule 50, the respondent will make a further adjustment, if required. Respondent allowed John a medical expense deduction of $150.30 for 1959 on the basis of substantiated expenses of himself and the 3 children for whom he took dependency deductions. A taxpayer may include, in computing his medical expense deduction, medical expenses which he paid on behalf of a dependent, so claimed on his return. Gertrude claimed only a personal exemption for herself on her returns for 1959 and 1960, and did not take any dependency exemption for any of the children. Furthermore, she did not substantiate and prove that she paid medical expenses in the amounts claimed for 1959 and 1960. Under these circumstances, we must sustain respondent's disallowance of the medical expense deductions for 1959 and 1960 in the respective amounts of $476.93 and $376.27. Other issues are disposed of by the Findings of Fact and discussion thereof is not necessary. In view of our allowance of certain deductions for 1957 *93 and 1959, Rule 50 recomputations of the deficiencies for those years are required and will be made by the respondent. The deficiency in the tax liability of Gertrude for 1960 is sustained. Decision will be entered under Rule 50. Footnotes
*. Respondent allowed an additional deduction for education expense in the amount of $12.50, or a total of $52.50.
*. Medical expenses, $150, also allowed.↩
*. The deduction claimed is only $830.↩
*. (Error of 10 cents; should be $485.66).↩